**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**RA-RICH MANUFACTURING CORPORATION, Respondent.**

**No. 120, Docket 25741.**

United States Court of Appeals Second Circuit.

Argued Jan. 7, 1960.

Decided March 23, 1960.

Richard H. Frank, National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin J. Welles, National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Leonard S. Kimmell, Mineola, N. Y. (Jacob Gersten, New York City, and Kimmell & Kimmell, Mineola, N. Y., on the brief), for respondent.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

The National Labor Relations Board petitions the Court for enforcement of its order directing Ra-Rich Manufacturing Corporation to (1) cease and desist from (a) interrogating its employees concerning their union activities in a manner constituting interference or coercion; (b) threatening employees with reprisals for engaging in union activities; (c) discouraging union membership by discrimination in regard to hire and tenure of employment; and (d) otherwise interfering with or coercing its employees in the exercise of their right to organize, all in violation of § 8(a)(1) and § 8(a)(3) of the National Labor Relations Act, 29 U.S.C.A. §§ 158(a)(1), (3);[1] (2) reimburse ten named employees for loss of pay resulting from unlawful discrimination against them; and (3) post the usual notices of compliance.

The issues raised by this petition are whether the Board's findings of unlawful coercion and discrimination are supported by substantial evidence and whether the Board, after it found that the Trial Examiner had mistakenly refused to permit respondent to examine pre-trial statements of witnesses of the General Coun-

---

1. Sec. 8(a) "It shall be an unfair labor practice for an employer—
    "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;
    *    *    *    *    *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

**453**

sel, was in error in limiting respondent upon remand to cross examination of the General Counsel's witness, rather than granting a trial *de novo*. We find that the record contains substantial evidence to support the Board's findings and that there was no prejudicial error in the procedure followed by the Board. We grant enforcement to the order.

Ra-Rich is engaged in manufacturing plumbing supplies at its plant in Holtsville, New York, where it employed about 19 persons in December, 1956. From the testimony before the trial examiner there was evidence to support the following findings. Early in December a representative of Local 142, Cooper's International Union, Aluminum Metal Alloys and Affiliated Trades, visited the Ra-Rich plant to organize the employees and obtained the signatures of 11 workers to union authorization cards. On December 11 Joseph Hendel, the president of Ra-Rich, held a meeting of all the employees, told them that he would close down the business rather than bargain with a union, and directed all those employees who had signed union cards to raise their hands. Nine employees raised their hands and Hendel thereupon discharged them. The following day the discharged employees began picketing the plant, carrying signs reading, "This is a lockout." On December 26, after the union had filed a representation petition with the Board, the discharged employees returned to work, each having received a letter from the company stating that they had not been discharged but had walked off the job of their own accord.

Subsequently, on February 8, 1957, employee Taliercio, one of the most vocal of the union supporters at the December 11 meeting, was again discharged, allegedly for lack of work. On February 26, employees Vogel and McGee were also discharged for the same stated reason. At the hearing before the Trial Examiner, respondent's bookkeeper testified that the company had experienced a slump in orders in early 1957 and a concurrent rise in its inventory. Company records were introduced to support this testimony. On the other hand, employee witnesses for the General Counsel testified that they did not notice any apparent lack of business or unusually large inventory at the time. There was also testimony that the discharges took place in a manner out of the ordinary in that no advance notice was given the employees of their discharge, notice was posted in the plant of their discharge, and the discharged men were informed of their dismissal by letter rather than in person and were given their final pay by check rather than in cash. In addition, contrary to the letters of discharge sent the three employees, there was evidence that two of them were senior to another employee who had not been discharged and who had not been among the nine who had raised their hands at the December 11 meeting. Furthermore, less than a month prior to the discharges respondent's president testified at the hearing upon the union's representation petition that he contemplated hiring a few more men.

■ Upon this evidence the Trial Examiner found that respondent had violated §§ 8(a)(1) and (3) of the Act by threatening its employees with economic reprisals for engaging in union activities and by discharging them on December 11. However, the Trial Examiner accepted the employer's contention that the February discharges were motivated by business considerations and found these discharges lawful. The Board accepted the Trial Examiner's conclusions as to the December discharges but reversed him as to the February dismissals, finding that these violated §§ 8(a)(1) and (3). It ordered that all the discharged employees be made whole for their losses of pay.

■ Respondent does not contest that there was substantial evidence to support the findings that it unlawfully discharged nine employees on December 11. However, it does urge that the Board's finding that it discharged a tenth employee, Edward Baker, on December 11 is not supported by the evidence. Baker, a company truckdriver, had signed a union card but had been absent from the plant

at the time of the December 11 meeting. The evidence showed that upon his return to the plant late that afternoon, Baker spoke with the plant superintendent, who gave him the option of abandoning his support of the union and thereby retaining his job with the company or continuing to support the union, in which event he would be discharged. Baker asked for an opportunity to think the matter over and appeared on the picket line the following day. Reversing the finding of the Trial Examiner, the Board found that respondent had violated the Act by imposing a choice of this character upon Baker. We agree with the Board. Whether the respondent explicitly discharged Baker for his union activity or only conditioned his retention on disavowal of the union, the conduct was unlawful. Imposing such a condition on continued employment discourages union membership almost as effectively as actual discharge. Plainly, § 8(a)(3), when it speaks of "discrimination in regard to * * * condition of employment," includes an unreasonable and improper condition for retaining employment as well as actual discharge.

■■ Respondent contends that there was insufficient evidence to support the Board's finding that the February discharges were discriminatory. It places great reliance on the fact that the Trial Examiner, who had the opportunity to see the witnesses and evaluate their credibility, reached a conclusion contrary to that of the Board. The Board, however, is not bound by a "clearly erroneous" or "substantial evidence" test in reviewing the findings of its trial examiners, as we are bound by the substantial evidence rule in reviewing factual findings of the Board. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 487–488, 492, 71 S.Ct. 456, 95 L.Ed. 456. Nor need we give the findings of the Trial Examiner greater weight than those of the Board, especially when, as in the present case, many of the relevant facts are substantially undisputed. Universal Camera Corp. v. N.L.R.B., supra, 340

U.S. at pages 496–497, 71 S.Ct. at pages 468–469; International Union of Electrical, Radio and Machine Workers v. N.L.R.B., 3 Cir., 1959, 273 F.2d 243. The Board in its opinion discussed at length the significance of the company records submitted in support of the argument that a slack in orders and a high inventory was the cause of the February dismissals and concluded that the figures did not sustain the respondent's position. We cannot say that the Board was incorrect in this determination. Moreover, the extensive evidence, largely uncontradicted, of the circumstances attending the dismissals lends strength to the Board's findings. N.L.R.B. v. Jamestown Sterling Corp., 2 Cir., 1954, 211 F.2d 725. The unusual manner in which the discharges were carried out, the prior testimony of respondent's president that the company anticipated hiring a few more employees, the posting of notices of discharge in the plant, and the ignoring of company seniority in the selection of employees to be discharged all support the Board's finding of discrimination.

■ Finally, respondent argues that it was deprived of due process by the conduct of the proceedings before the Trial Examiner after remand from the Board. Subsequent to the Board's original decision and order, respondent moved the Board to reopen the record, asserting that under this Court's decision in N.L.R.B. v. Adhesive Products Corp., 2 Cir., 1958, 258 F.2d 403, the Trial Examiner erred in refusing to require the General Counsel to turn over to respondent pretrial statements given the General Counsel by his witnesses. The motion was granted to the extent of permitting respondent to cross-examine the General Counsel's witnesses after examining the pre-trial statements. At the reopened hearing, respondent urged that it was entitled to a trial de novo, but the Trial Examiner declined to permit anything other than cross-examination of witnesses. Thereafter a supplemental intermediate report was issued, in which the Trial Examiner reversed certain of his earlier

findings as to credibility of witnesses, but made no change in his conclusions that the December 11 discharges were unlawful. Respondent took no exception to the supplemental report, which was adopted by the Board.

■ Having failed to except to the report of the Trial Examiner, the respondent may not here argue that the reopened hearing denied him due process. Section 10(e) of the Act provides that "no objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Section 102.46(b) of the Board's rules amplifies § 10 of the Act by providing that "no matter not included in a statement of exceptions may thereafter be urged before the Board, or in any further proceeding." No extraordinary circumstances are present here and in their absence the Court may not consider objections not raised before the Board. N.L.R.B. v. District 50, United Mine Workers, 1958, 355 U.S. 453, 463–464, 78 S.Ct. 386, 2 L.Ed.2d 401; Building Material Teamsters, etc. v. N.L.R.B., 2 Cir., 1960, 275 F.2d 909, 913, 914.

■ Moreover, respondent has made no showing that it was prejudiced by the failure to afford it a trial *de novo*. It urges that it should have been permitted at the reopened hearing to examine employee Bonjiorno so as to elicit testimony that he raised his hand at the December 11 meeting but was not discharged. However, the supplemental report of the Trial Examiner specifically found the very fact that respondent claims it should have been permitted to prove. A fuller hearing could hardly have produced more. While there may be circumstances where a new trial would be necessary to correct an error such as the General Counsel's refusal to turn over pre-trial statements, it was not improper to restrict the scope of the reopened hearing in this case.

Enforcement granted.