**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**COMMUNITY MOTOR BUS COMPANY,
Inc., Respondent.**

**No. 9196.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 16, 1964.

Decided July 27, 1964.

Anthony J. Obadal, Atty., National Labor Relations Board, (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., National Labor Relations Board, on brief), for petitioner.

John A. MacKenzie, Portsmouth, Va., for respondent.

Before HAYNSWORTH, BOREMAN and BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge.

In this unfair labor practice case we grant enforcement, for the Board's findings are adequately supported by the record considered as a whole.

Preliminarily, the employer tenders a question of the jurisdiction of the Board over this local transit company operating bus lines in the City of Portsmouth, Virginia. The question, however, is not properly before us, because not urged before the Board.

The respondent, in its answer, denied that it was engaged in commerce within the meaning of § 2(6) of the Labor Management Relations Act as amended. The Trial Examiner found that it was. He did so on the basis of evidence of direct purchases by it of parts from suppliers out of the State of Virginia and its purchase of large quantities of gasoline imported into Virginia by one of the major oil companies. This jurisdictional finding of the Trial Examiner was not made the subject of an exception before the Board. The employer filed exceptions to all of the substantive findings of unfair labor practices, but it apparently abandoned its jurisdictional question when the case went before the Board. It affirmatively informed the Board, "We raise no contest over the 'commerce' clause finding, although we find no criteria for delineating its applicability to a small local bus line."

By § 10(e) of the Act, we are precluded from considering any "objection that has not been urged before the Board, its member, agent, or agency * * *." While the jurisdictional question was

technically raised by the answer, it was not only not raised before the Board; it was clearly abandoned. Under those circumstances, the attempt to have this Court now pass upon it is unavailing.[1]

The principal question on appeal is whether the employer violated § 8(a) (3) of the Act when it refused to re-employ Roland J. Bell, one of its bus drivers.

Originally Bell claimed that he had been unlawfully discharged because of his union activities. This was said to have occurred on February 23, 1962. At the hearing before the Trial Examiner, he also claimed that he had been unlawfully refused re-employment on February 28, 1962, and the Trial Examiner found that he had been both unlawfully discharged on the 23rd and unlawfully refused re-employment on the 28th. The Board, however, refused to accept the Trial Examiner's recommended finding of an unlawful discharge on February 23rd and rested its finding of violation of § 8(a) (3) of the Act solely upon the refusal of re-employment on February 28th. The Board thus found, in effect, that on February 23rd Bell had voluntarily quit his employment. It was because of that finding of the Board that we denied a motion of the employer to remand the case to the Board for further findings based upon a claim of after discovered evidence consisting of testimony by some of Bell's fellow employees that he had told them that he had voluntarily quit his employment on February 23rd.

Bell testified that on the morning of February 22nd, Archie B. Stewart, the employer's general manager, charged Bell with attempting to organize the bus drivers into a union. Bell had previously testified of his organizational activity, but he testified that he disclaimed to Stewart knowledge of any such efforts. Stewart responded that he knew what was going on and admonished Bell, "If

you have been engaged in any union activities, you better watch yourself."

On the next day, February 23, 1962, Bell received his weekly check which he thought was $5.10 short. He undertook to speak to Stewart about it, and the two apparently got into an argument. According to Bell's testimony, this ended with a statement by Stewart that if "These damn union men you have been messing with * * * [have] offered you [a job] you better take it."

Bell testified that he understood from those words of Stewart on the 23rd that he was discharged, but the Board has found that he was not.

Bell telephoned Stewart at his home on the evening of February 27th, expressing a wish to talk to him and was informed that Stewart would see him the next morning at approximately 10:00 o'clock. According to Bell's testimony, when he saw Stewart on the morning of the 28th he asked if Stewart would put him back to work. Bell's testimony of Stewart's response to this is as follows:

"He told me, he said, 'Bell you been mixed up with this union' and he said, 'We're not going to have a union out here, if there is anything I can do about it.' He said, 'We had a union here one time' and he said, 'We had to lay our men off like hell.' Then he said, 'We are not just going to have it.' He said, 'I'm not going to have it.'

"Q. Did he use any profanity or obscenity?

"A. Yes.

"Q. In describing his feelings?

"A. Yes, he did.

"Q. Would you tell us for the record what he said?

"A. He said, 'I can't understand why you want to pay those Son-of-a-bitches eight dollars a month to dic-

1. N.L.R.B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 322, 82 S.Ct. 344, 7 L.Ed.2d 312; Marshall Field & Co. v. N.L.R.B., 318 U.S. 253, 255, 63 S.Ct. 585, 87 L.Ed. 744; N.L.R.B. v. Pugh & Barr, Inc., 4 Cir., 194 F.2d 217, 220–221; N.L.R.B. v. Pappas & Co., 9 Cir., 203 F.2d 569, 571.

tate to you.' 'They tell you when you can work and when you can't work.' "

Stewart, in his testimony, disagreed with Bell's version of these events in every substantial particular. According to him the two had never discussed the union or Bell's association with organizational efforts. Bell, according to Stewart, simply failed to report for work on February 24th, 25th, 26th or 27th, but did come to see him on the morning of the 28th pursuant to an appointment made with him by telephone the previous evening. Stewart testified that on the morning of the 28th, Bell, who had been previously cautioned about absenteeism, undertook to explain his most recent absences and sought to be put to work. Stewart testified that he had told Bell to come back at 2:00 o'clock and that, if he appeared then, Stewart would inform him whether or not he could go back to work. After Bell left, he told two supervisors to put Bell to work if he did report back at 2:00 o'clock, but Bell did not show up again until over a month later.

■ This is the plainest kind of case in which the finder of fact must resolve the conflicting evidence.

Stewart's version of the events discloses no unlawful discrimination against Bell, and his version is supported in part by that of the two supervisors to whom he spoke after talking with Bell on the morning of the 28th. Bell's testimony, however, is quite sufficient to support a finding of refusal to re-employ Bell on the morning of February 28th solely because of Bell's efforts on behalf of the Union. Stewart testified he then needed additional drivers, indeed that he was willing to re-employ Bell. If Bell's testimony is accepted as true, in light of the employer's admitted need of additional drivers, he was clearly denied re-employment because of his union activity. Bell's testimony is corroborated to some extent by the testimony of a number of

other witnesses of very strong and violent antiunion remarks by Stewart and another supervisor. If we might find Bell less credible than Stewart, it was for the Board to resolve this pure question of credibility.

Several other employees testified that because of their prounion activity, they were threatened by Stewart and another supervisor. Each of these instances was denied by Stewart or the other supervisor involved, but, again, it was for the Board to resolve these questions of credibility, and its finding of a violation of § 8(a) (1) of the Act must be accepted.

■ Finally, the employer protests the Board's finding of a violation of § 8(a) (1) of the Act through unlawful surveillance of a union meeting. There was testimony that some of the bus drivers met at a downtown hotel in Portsmouth on a number of occasions, beginning in the late evening hours and lasting until the early hours of morning. Several of them, and the wife of one, testified that on one such occasion Stewart and the Street Supervisor were seen in and in front of an all night lunch counter immediately across the street from the hotel entrance, and that they lingered there for more than half an hour. Stewart and the Street Supervisor denied the charge, but the testimony was enough to support an inference by the Board that on that occasion they were seeking to learn who was in attendance at the union meeting, or to give the bus drivers the impression that their organizational efforts were being closely watched by the employer.[2] This is enough to warrant the inclusion in the Board's order and the notice to be published of a prohibition against, and renunciation of, surveillance of union meetings.

Since we find in the record as a whole support for the Board's findings, its decree will be enforced.

Decree enforced.

2. Hendrix Manufacturing Company v. N. L.R.B., 5 Cir., 321 F.2d 100, 104 n. 7;

N.L.R.B. v. United Wire & Supply Corporation, 1 Cir., 312 F.2d 11, 13–14.