NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 66, A, B & C, AFL–CIO.

No. 15202.

United States Court of Appeals Third Circuit.

Argued Sept. 21, 1965.

Decided March 9, 1966.

Michael N. Sohn, N. L. R. B., Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Melvin J. Welles, Attorney, N. L. R. B., on the brief), for petitioner.

Joseph Mark Maurizi, Pittsburgh, Pa. (Gatz, Cohen, O'Brien & Maurizi, Pittsburgh, Pa., on the brief), for respondent.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

The National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, as amended (29 U.S.C. § 160(e)), petitions for the summary enforcement of its order issued against the respondent, Local 66.

The question presented to us is whether a respondent charged with an unfair labor practice who appeared and participated in the proceedings before the Trial Examiner but filed no exceptions to his report may now defend on the ground that the decision of the Trial Examiner, which automatically became the decision of the Board, was erroneous.

The General Counsel of the Board alleged in his complaint that respondent, Local 66, and International Association of Bridge Structural and Ornamental Iron Workers, Local 772, AFL-CIO, had committed an unfair labor practice by engaging in a secondary boycott condemned by § 8(b) (4) (i) (B) and (ii) (B) of the Act (29 U.S.C. § 158), in picketing a secondary employer, West Penn Power Company, with an object of forcing or requiring it to cease doing business with a primary employer, Irvin-McKelvy Company.

The Complaint was heard before the Board's Trial Examiner, pursuant to due notice. Respondent was represented by counsel and was an active participant in the hearing. On October 28, 1964, the Trial Examiner filed his decision containing findings of fact, conclusions of law and a recommended order. He found that respondent's primary dispute was with Irvin-McKelvy, whose employees were not members of the unions, that respondents had picketed West Penn with an object of forcing or requiring it to cease doing business with Irvin-McKelvy, and that they had therefore engaged in "secondary picketing" or a "secondary boycott". The Trial Examiner considered and explicitly rejected respondent's defense that West Penn and Irvin-McKelvy were allies. He found that the only evidence of an alliance between them was a provision in their contract for the installation of equipment by Irvin-McKelvy at West Penn's power station to the effect that Irvin-McKelvy's employees used on the job should be subject to the approval of West Penn. He found that this did not alter Irvin-McKelvy's status as an independent contractor or make it an ally of West Penn, or its men the employees of West Penn. Local 772 specifically agreed to comply with the Trial Examiner's decision. Respondent, Local 66, filed no exceptions to the decision, and the Board therefore on November 26, 1964, automatically adopted the findings, conclusion and recommended order

of the Trial Examiner with respect to it, pursuant to § 10(c) of the Act (29 U.S.C. § 160(c)) and the Board's Rules and Regulations.

Respondent now urges us to refuse enforcement of the Board's order on the ground that it was erroneous to hold that West Penn did not, by virtue of the contract, become an ally of Irvin-McKelvy and therefore a primary employer. The Board maintains that respondent has lost the right to persist in this claim by failing to except to the Trial Examiner's decision.

Section 10 of the Administrative Procedure Act (5 U.S.C. § 1009) provides for judicial review of all questions of law relevant to agency decisions except where precluded by statute. We are brought, therefore, to the provisions of the National Labor Relations Act.

Section 10(e) of the Act, which deals with judicial enforcement of Board decisions, provides: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." (29 U.S.C. § 160(e)).

In 1947 the Taft-Hartley Act added the following provision to § 10(c): "In case the evidence is presented before a member of the Board, or before an examiner or examiners thereof, such member, or such examiner or examiners as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed." (29 U.S.C. § 160 (c)).

The Board's Rules and Regulations, promulgated under power expressly granted it by Congress [1] make detailed requirements for the filing of exceptions to the Trial Examiner's decision and expressly provide that if exceptions are not filed, the findings, conclusions and recommendations of the Trial Examiner shall automatically become the findings, conclusions and order of the Board and all objections and exceptions thereto shall be deemed waived for all purposes.[2]

The Supreme Court has consistently held, both before and after the Taft-Hartley Act, that subsection (e) prohibits the raising in the courts of objections not made to the Board unless relief may be granted under the statutory exception of excuse because of extraordinary circumstances, or because the Board has patently travelled outside the orbit of its authority. Marshall Field & Co. v. N. L. R. B., 318 U.S. 253, 256, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943); May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 386–387, 66 S.Ct. 203, 90 L.Ed. 145 (1945); N. L. R. B. v. Cheney California Lumber Co., 327 U.S. 385, 388–389, 66 S.Ct. 553, 90 L.Ed. 739 (1946); N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 350, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953); N. L. R. B. v. District 50, United Mine Workers of America, 355

1. National Labor Relations Act, § 6 (29 U.S.C. § 156).

2. Rules & Regulations, Series 8, as amended, 29 C.F.R. Part 102. § 102.46 states: " * * * (b) Each exception (1) shall set forth specifically the questions of procedure, fact, law, or policy to which exceptions are taken * * *. Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged shall be deemed to have been waived. * * * " "(h) No matter not included in exceptions or cross-exceptions may thereafter be argued before the Board, or in any further proceeding."
Section 102.48(a) provides: "In the event no timely or proper exceptions are filed as herein provided, the findings, conclusions, and recommendations of the trial examiner as contained in his decision shall, pursuant to section 10(c) of the act [29 U.S.C. § 160(c)], automatically become the decision and order of the Board and become its findings, conclusions, and order, and all objections and exceptions thereto shall be deemed waived for all purposes."

U.S. 453, 463–464, 78 S.Ct. 386, 2 L.Ed.2d 401 (1958); N. L. R. B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961).[3] In Marshall Field, the Court declared that § 10(e) expresses "the salutary policy * * * of affording the Board opportunity to consider on the merits questions to be urged upon review of its order." The purpose of this policy is to give full recognition to the "function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).[4]

Respondent does not claim that it is excused from its failure to file exceptions to the Trial Examiner's report because of extraordinary circumstances, or that the Board's order is patently outside the scope of its authority. It claims that the Supreme Court decisions are inapplicable because it has satisfied the requirement of § 10(e) of the Act in urging its contention before an "agent" of the Board, i. e., the Trial Examiner.

The decisions cited are indeed in strictness distinguishable on close examination, for in them the issue proposed to the courts was not raised at any stage of the administrative proceedings. Moreover, respondent's contention is not without its literal justification. In a general sense, a Trial Examiner may well be described as an "agent" of the Board.[5] We must, however, look to the dynamic purpose which the statute seeks to effectuate in this area. It must not be permitted to be distorted by the chance repetition of words which in a different setting might have a broader meaning. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 489, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The history of subsections (c) and (e) in the context of the plan for the functions of the Trial Examiner and the Board makes it clear that the Trial Examiner cannot be considered the "agent" of the Board in regard to objections that must be made to it.

Under the Board's original plan of operation, developed under the Wagner Act, the Trial Examiner filed an intermediate report which was merely advisory, much like an inter-office memorandum to the Board, which independently decided the case de novo after it had its own staff review the report and the underlying record. While as an administrative matter the Trial Examiner's

---

3. In Seven-Up, supra, where the company's exceptions to the Trial Examiner's report had specified only that the recommendations as to the remedy were contrary to law, Mr. Justice Frankfurter said: "* * * This is not adequate notice that the Company intends to press the specific issue it now raises. * * *" It was therefore held that the company's objections were foreclosed. See also N. L. R. B. v. McCloskey & Co., 255 F.2d 68 (3rd Cir. 1957); Allegheny Pepsi-Cola Co. v. N. L. R. B., 312 F.2d 529 (3rd Cir. 1962).

4. See also, Garner v. Teamsters, Chauffeurs and Helpers Local Union, 346 U.S. 485, 490, 74 S.Ct. 161, 98 L.Ed. 228 (1953); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242–243, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Marine Engineers Beneficial Ass'n v. Interlake Steamship Co., 370 U.S. 173, 178–181, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962).

Compare Hennesey v. S. E. C., 285 F.2d 511 (3rd Cir. 1961).

5. Section 5 of the Act permits the Board to designate "agents or agencies" to prosecute inquiries necessary to its functions. The present separation of the judicial and prosecutorial functions of the Board and its staff would of course preclude the Trial Examiner from being deemed to be authorized to prosecute inquiries, even though he might for other purposes be an "agent" of the Board.

Subsections (b) and (c) of § 10 authorize the Board to delegate to an "agent or agency" the authority to hold hearings and take testimony; § 11 gives the Board or its "agent" access to documents, power to administer oaths and to examine witnesses; and § 10(e) authorizes the court to order additional testimony to be taken before the "Board, its member, agent, or agency." These provisions clearly fall within the scope of the duties of a Trial Examiner.

intermediate report was made available to the parties so as to enable them to present their views to the Board, the Board was required to decide the case whether exceptions were filed or not. This procedure meant that an issue raised before the Trial Examiner inevitably was also presented to the Board. The Trial Examiner might well be described under the Wagner Act as an "agent" for purposes of the pertinent sentence of subsection (e), since he assembled the evidence and the contentions of the parties and submitted it to the Board with his recommendation. See N. L. R. B. v. Botany Worsted Mills, 133 F.2d 876, 882 (3rd Cir. 1943), cert. denied, 319 U.S. 751, 63 S.Ct. 1164, 87 L.Ed. 1705 (1943). See generally, Jaffe, Administrative Law (1961), pp. 717–21. This is the reason that the decisions under the Wagner Act did not distinguish between failure to object before the Trial Examiner and failure to object before the Board.

In the Taft-Hartley Act of 1947 Congress expressed its dissatisfaction at the lack of independence of the Trial Examiner which had followed from the Board's unlimited review of all cases heard by him.[6] By the additional provision in subsection (c) it limited the Board's examination of cases to those in which the unsuccessful party specifically appealed to it for review of the decision of the Trial Examiner. See N. L. R. B. v. Stocker Mfg. Co., 185 F.2d 451, 454 (3rd Cir. 1950). Compare Building Material Teamsters, etc. v. N. L. R. B., 275 F.2d 909, 913 (2nd Cir. 1960). Where no exceptions are filed to the Trial Examiner's decision, his findings of fact, conclusions of law and recommended order now automatically become those of the Board. Accordingly, under the present plan if a Trial Examiner were to be deemed an "agent", a dissatisfied litigant could bypass the Board and raise an issue in the Court of Appeals without the Board having had an opportunity to reconcile the Trial Examiner's decision with its general policy, fashioned in its expert view of federal labor law.[7] It would require a concrete expression in an unmistakable manner to show that Congress intended this result, which would mean abandonment of its important design in which the Board was to develop the national labor policy. The legislative history contains no such expression. Opponents of the Taft-Hartley Act did complain that the result of the amendment of § 10(c) would be to allow litigants to bypass the Board.[8] Senator Taft, in answering this criticism in a formal analysis of the Conference Bill, stated: "Several checks would present this happening. Section 10(e) provides, 'No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the Court.' In addition, the attorney trying the case would presumably file exceptions to such a report and the General Counsel in any event would not go forward with enforcement if the order was erroneous."[9] To us this statement seems sufficiently ambiguous to leave the answer to the question in doubt, although Chief Judge Parker in N. L. R. B. v. Pugh & Barr, Inc., 194 F.2d 217, 219 (4th Cir. 1952), construed it to mean that challenge in the courts was foreclosed to one who did not make objection to the Trial Examiner's report. In these circumstances of legislative uncertainty the fact that Congress did not undertake

6. S.Rep. No. 105, 80th Cong. 1st Sess., pp. 9, 20 (1947) ; Universal Camera Corp. v. N. L. R. B., supra, 340 U.S. at 493–495, 71 S.Ct. 456, 95 L.Ed. 456.

7. While Congress clearly intended to limit the role of Board expertise as a substitute for evidence (See H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess., p. 53 (1947), U.S.Code Cong.Serv.1947, p. 1135), its decision not to abolish the Board or to create a labor court indicates an acknowledgment of the utility of the Board's expert knowledge. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); cases cited at note 4, supra.

8. See, e. g., H.R.Rep. No. 425, 80th Cong., 1st Sess., Minority Views, at 93 (1947); Speech of Senator Morse, 93 Cong.Rec., 80th Cong., 1st Sess., p. 6456 (1947); Speech of Senator Murray, id., p. 6506.

9. 93 Cong.Rec. 6860.

to make a complex revision of subsection (e), expressing in specific language the requirement of successive objection to the Trial Examiner and then to the Board, is of no real significance.

In a long line of decisions by most of the Courts of Appeals it has been held that under the existing statutory provisions objections not raised before the Board are waived, notwithstanding their having been presented before the Trial Examiner.[10] Congress has not intervened in this judicial construction, and its inaction, especially in so sensitive an area, is an acceptable element of guidance,[11] and indicates that the judicial view is not out of harmony with its intention.

Finally, respondent urges that if the failure to object to the Board is to be deemed a waiver, the rule should be restricted to issues of fact and not include issues of law. It points out that many of the decisions which have held the objection waived, dealt with issues of fact. It seeks support in the language in subsection (e), following that dealing with waiver, which provides that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive", and suggests that it indicates that the waiver provision therefore was intended to apply only to questions of fact.

The boundaries between "fact" and "law" are not so sharply delineated [12] that we would encourage the use of such distinctions in determining the need to file exceptions to the Trial Examiner's decision. Indeed the question whether Irvin-McKelvy's employees were em-

10. *First Circuit:* N. L. R. B. v. Izzi, 343 F.2d 753 (1965).

*Second Circuit:* Building Material Teamsters etc. v. N. L. R. B., 275 F.2d 909, 913–914 (1960); N. L. R. B. v. Ra-Rich Mfg. Corp., 276 F.2d 451, 455 (1960); contra, International Ladies Garment Workers' Union, etc. v. N. L. R. B., 339 F.2d 116, 121, n. 1 (1964). N. L. R. B. v. Lundy Mfg. Corp., 286 F.2d 424, 426 (1960) is not contrary; it relies on the extraordinary circumstances under § 10(e) because respondent did not include a specific criticism of the then existing law.

*Third Circuit:* In N. L. R. B. v. Marshall Maintenance Corp., 320 F.2d 641 (1963), the court refused summary enforcement of a Board order because the Board had refused to consider exceptions it had received one day late, in circumstances which we deemed extraordinary and an excuse for the untimely filing.

*Fourth Circuit:* N. L. R. B. v. Pugh & Barr, supra; N. L. R. B. v. Community Motor Bus Co., Inc., 335 F.2d 120 (1964); N. L. R. B. v. Kotarides Baking Co., Inc., 340 F.2d 587 (1965).

*Fifth Circuit:* N. L. R. B. v. Mooney Aircraft, Inc., 310 F.2d 565 (1962).

*Sixth Circuit:* N. L. R. B. v. Globe-Wernicke Systems Co., etc., 336 F.2d 589 (1964); N. L. R. B. v. Richard W. Kaase, 346 F.2d 24, 28–29 (1965); N. L. R. B. v. Ferraro's Bakery, Inc., 353 F.2d 366 (1965).

*Seventh Circuit:* Kovach v. N. L. R. B., 229 F.2d 138, 143–144 (1956); Kiek-

haefer Corp. v. N. L. R. B., 273 F.2d 314, 316, cert. denied, 362 U.S. 950, 80 S.Ct. 861, 4 L.Ed.2d 868 (1960).

*Ninth Circuit:* N. L. R. B. v. Noroian, 193 F.2d 172 (1951); N. L. R. B. v. Essex Wire Corp., 245 F.2d 589, 591 (1957); N. L. R. B. v. Giustina Bros. Lumber Co., 253 F.2d 371, 374 (1958). The contrary view in N. L. R. B. v. Red Spot Electric Co., 191 F.2d 697 (1951) is dictum and has not survived the later 9th Circuit cases.

*D.C. Circuit:* Puerto Rico Drydock & Marine Terminals, Inc., v. N. L. R. B., 109 U.S.App.D.C. 78, 284 F.2d 212, 215–216 (1960), cert. denied, 364 U.S. 883, 81 S. Ct. 172, 5 L.Ed.2d 104 (1960).

11. See, e. g., F. C. C. v. A. B. C., Inc., 347 U.S. 284, 296, 74 S.Ct. 593, 98 L.Ed. 699 (1954); Apex Hosiery Co. v. Leader, 310 U.S. 469, 487–489, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). Compare Cleveland v. United States, 329 U.S. 14, 22, 67 S.Ct. 13, 91 L.Ed. 12 (1946) (Rutledge, J., concurring); Wong Yang Sung v. McGrath, 339 U.S. 33, 47, 70 S.Ct. 445, 94 L.Ed. 616 (1950).

12. See 4 Davis, Administrative Law Treatise (1958), § 30.01, et seq.; Jaffe, Judicial Review: Question of Law, 69 Harv. L.Rev. 239 (1955); Question of Fact, id., at 1020 (1956); N. L. R. B. v. Marcus Trucking Co., Inc., 286 F.2d 583, 590–592 (2nd Cir. 1961) (Friendly, J.); see also Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163 (E.D.Pa.1962).

ployees also of West Penn or were under their control to the extent that the two companies became allies, superficially appears to call for factual determination,[13] and illustrates the typical ambiguities which pervade distinctions between questions of fact and questions of law. Where the issue is the scope of review such uncertainty may be tolerable, but it would be destructive of the effective administration of the Act if the right of review depended on such a distinction. Moreover, the distinction, even if it could be workably maintained, would violate the recognized policy of the courts to accord initial recognition to the administrative agency's determinations of law in the complex factual settings in which they usually occur. The recognized administrative role of the Board is not limited to factual determinations; it has an equally important place in the application of labor law to the facts thus ascertained.[14]

Only, therefore, if the language of the Act required it would we recognize such an artificial distinction. The language does not compel such a conclusion; indeed, the absence of the limitation to questions of fact in the provision requiring objections to be made points clearly to the opposite conclusion. The waiver rule of § 10(e) must therefore be applied without any artificial distinction between questions of fact and law.[15]

We therefore conclude that respondent lost the right to complain of errors in the Trial Examiner's decision when it failed to file exceptions with the Board. This is the result required by the long course of decisions which Congress has left unchanged, by the consistent position of the Board reflected in its Rules and Regulations, and by the policy which requires that the Board's

expert judgment should be brought into play by a dissatisfied litigant before recourse is had to the courts.

The petition of the Board therefore will be granted and its order enforced.

13. See N. L. R. B. v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

14. See, e. g., Garner v. Teamsters Chauffeurs and Helpers Local Union, supra; San Diego Building Trades Council v. Garmon, supra; cf. Radio Officers Union, etc. v. N. L. R. B., 347 U.S. 17, 48–52, 74 S.Ct. 323, 98 L.Ed. 455 (1954).

15. See Puerto Rico Drydock & Marine Terminals, Inc. v. N. L. R. B., 109 U.S. App.D.C. 78, 284 F.2d 212, 216 (D.C. Cir. 1960), cert. denied, 364 U.S. 883, 81 S.Ct. 172, 5 L.Ed.2d 104 (1960).