TEXACO, INC., Petitioner Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.

No. 82–4054.

United States Court of Appeals, Fifth Circuit.

March 21, 1983.

Rehearing and Rehearing En Banc Denied April 28, 1983.

Randall N. Finley, J.M. Mitchell, Houston, Tex., for Texaco, Inc.

Elliott Moore, Deputy Associate Gen. Counsel, Ralph Simpson, N.L.R.B., Washington, D.C., for N.L.R.B.

Before JOHNSON, WILLIAMS and JOLLY, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This case involves our review of a finding of unfair labor practices against an employer who cut off accident and sickness benefits being paid to two employees when the union staged an economic strike. The disabled employees had taken no position either in favor of or against the strike at the time benefits were cancelled.

## I. FACTS

The International Union of Oil, Chemical and Atomic Workers represented approximately 125 employees at a Texaco Oil Company facility in El Paso, Texas. On January 8, 1980, the Union commenced a strike at the facility which lasted until about March 29, 1980. The employer described this strike as 100% effective, which means no one from the bargaining unit went to work during the strike.

However, not all the workers were necessarily committed to the strike at its inception. Leon J. Dove, a Texaco employee for 26 years, had been out on sick leave since December 20, 1979 for gall bladder surgery. He was given a final medical release to return to work effective January 14, 1980, according to the findings of the Administrative Law Judge.[1] When his disability ended, the strike was already underway. Dove neither crossed nor joined the picket lines when his disability ended. However, he did work at the Union Hall to assist the strike. Dove evidently expressed no opinion concerning the strike while he was disabled.

---

1. The Board, on appeal, vacated the determination of the exact date of Dove's release, so that the exact date is not yet conclusively known. *See* part III B, *infra.*

Antonio O. Dominguez had worked for Texaco since 1946. Before the strike began, he was hospitalized for complications of diabetes. The record shows that his doctor authorized his return to work on February 18. Rather than returning to the struck Texaco facility, Dominguez joined the picket line.

Disabled workers like Dove and Dominguez receive accident and sickness (A & S) payments from Texaco under the terms of a collective bargaining agreement. The amount and duration of the payments varies with seniority. On the eve of the January strike, Texaco announced its policy on A & S payments in the event of a strike. Payments would continue to workers who were unable to work due to a work-related accident, but would be cut off to workers who were victims of sickness or non-industrial accidents. Dove and Dominguez lost their A & S benefits on January 8 when the strike began.

In June, 1980, Dove and Dominguez filed an unfair labor practice complaint with the NLRB complaining that Texaco had cut off A & S benefits in retaliation against the strike. The NLRB concluded that the employer committed an unfair labor practice within the meaning of section 8(a)(1) and (3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), (3), and ordered Texaco to pay A & S benefits and interest to the two employees. Texaco petitions this Court for review, and the NLRB cross-appeals for enforcement. We enforce the Board's order.

## II. EMPLOYER'S LIABILITY

### A. The Board's Determination.

■ An employer commits an unfair labor practice if it undertakes measures to retaliate against a valid economic strike of its workers. 29 U.S.C. § 158. Yet an employer is also not required to "finance a strike against itself." *General Electric Company,* 80 N.L.R.B. 510 (1948). These competing considerations are the basis of the universal rule that striking employees are not paid wages. Employers may be prohibited, however, from cutting off benefits which are accrued, such as vacation pay or sick leave. *NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967) (vacation pay); *Local Union No. 186, United Packinghouse Food and Allied Workers v. Armour and Co.,* 446 F.2d 610 (6th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972) (vacation pay during plant shutdown); *Indiana & Michigan Elec. Co.,* 236 N.L.R.B. 986 (1978), *enf'd without opinion,* 610 F.2d 812 (4th Cir.1979) (leave pay). In the case before us, Texaco contends that its A & S payments are not accrued and are the equivalent of wages, so that they properly could be discontinued when the strike began. The employees argue that A & S benefits are accrued rights that may not be terminated automatically.

The A & S benefits at issue before this Court do not fall easily into the categories of accrued benefits or wage equivalents. They resemble other accrued benefits such as sick leave or vacation pay in that the available benefits increase with seniority and do not depend on a workplace-related accident to be payable. Yet they also have characteristics of wages: the plan is non-contributory, and the funds involved are not redeemable upon termination of employment. They are accrued in the sense that benefits are payable after a certain length of service, but the benefits are paid only for the period of disability and only as a substitute for wages. If an employee were disabled while on vacation pay, for example, a switch from vacation pay to A & S benefits would not take place until after the pre-scheduled vacation had ended.

The NLRB found that the A & S benefits resembled accrued benefits in the sense that benefits were payable when a sickness or accident occurred. We find ample evidence in the record to support this interpretation. Yet Texaco contends that even if the benefits were accrued, Texaco was justified in terminating the payments because the employees failed to come forward and present satisfactory evidence of entitlement to benefits. Satisfactory evidence from the employer's perspective includes an affirmative

disavowal of support for the strike. The employees argue that no such affirmative statement against the strike should be necessary because a worker should have the right to remain silent regarding the strike while he or she is disabled.

This dispute states the fundamental issue: may an employer infer support for a strike from a disabled worker's silence and use that support as justification for cutting off A & S benefits? Until recently, the NLRB permitted an employer to presume support for strike activity from a worker's silence. In *Southwestern Electric Power Co.*, 216 N.L.R.B. 522 (1975), the Board had taken the position that an employer may reasonably believe that employees on sick leave when a strike begins support that strike solely on the basis that the strike is effective and the employees are union members. Texaco relies upon this reasoning, and points to the 100% effectiveness of the 1980 strike, the union membership of Dove and Dominguez, and their support for a prior strike in 1969, to justify an inference of sympathy for the 1980 strike.

However, the NLRB reversed its 1975 decision on which Texaco relies in *Emerson Electric Co.*, 246 N.L.R.B. 1143 (1979), *enf'd as modified sub nom. E.L. Wiegand Div. v. NLRB*, 650 F.2d 463 (3d Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982). As in the case before us, the employer in *Emerson Electric* terminated payment of sickness and accident benefits to disabled employees at the inception of a strike by the employees' bargaining unit. The NLRB found that the termination was an unfair labor practice because

of its interference with the employees' rights under Section 7 of the NLRA, 29 U.S.C. § 157, to assist labor organizations or to refrain from such activities. Adding a requirement on the eve of a strike that sickness and accident benefits were payable only upon relinquishment of an employee's right to silence was not consistent with the goals of the National Labor Relations Act. To the extent that this reasoning was inconsistent with *Southwestern Electric*, the Board overruled the earlier case.[2] The Board has followed *Emerson Electric* in subsequent cases, *e.g., Conoco, Inc.*, 265 N.L.R.B. No. 116, NLRB Dec. (CCH) ¶ 15,-444 (Dec. 10, 1982), *appeal docketed*, No. 83–1068 (10th Cir. Jan. 18, 1983).

Texaco, in effect, is asking us to overturn the Board's holding in *Emerson Electric* and return to the previous NLRB position enunciated in *Southwestern Electric*. It contends that the NLRA does not prohibit an employer from presuming that disabled union members would be on strike but for their disability, and that the employer should have no duty to pay wage substitutes to these workers. However, Texaco is exaggerating the severity of the Board's position. The NLRB is not seeking to require A & S payments to all workers in all circumstances. The Board merely takes the position that the employer may not presume support for a strike from a disabled worker's silence.

B. Appellate Review.

■ Our inquiry into administrative actions is limited in order to show deference

---

**2.** The Third Circuit also ruled in its review of the decision that workers could not lose their benefits even after joining the strike unless the employer showed the worker was no longer disabled. In their view, a worker could have a broken arm and hence be unable to perform his/her position at work but still be able to carry a picket sign with the other arm. The *Emerson Electric* court believed disability payments should continue in such a situation because the worker would still be disabled from the employer's perspective. 650 F.2d at 473–74.

We need not face this aspect of the *Emerson Electric* case. The employees are seeking A &

S benefits for the short periods of their disability, and took no part in strike-related activity during that period. The administrative proceedings show that Dove and Dominguez never expressed any view regarding the strike during their disability. The fact that they each took actions in support of the strike after their disabilities ended does not control because it does not permit them to retain the option of silence and non-participation while ill in their beds. Accordingly, we express no opinion today on the availability of A & S benefits once a still-disabled employee expresses support for a strike.

to the special expertise of the agency. *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). The Board's holding in this case is not capricious or arbitrary, even if the Board did abandon an earlier ruling. *In Re Permian Basin Area Rate Cases,* 390 U.S. 747, 784, 88 S.Ct. 1344, 1369, 20 L.Ed.2d 312 (1968); *Creppel v. United States Army Corps of Engineers,* 670 F.2d 564, 571 (5th Cir.1982); *American Petroleum Inst. v. EPA,* 661 F.2d 340, 355 (5th Cir.1981); *NLRB v. Haberman Construction Co.,* 618 F.2d 288, 309–11 (5th Cir.1980), *on reh'g,* 641 F.2d 351 (1981); *NLRB v. A.P.W. Products Co.,* 316 F.2d 899, 905–06 (2d Cir.1963). The dispositive factor is that the Board justified its position within the statutory framework. *Creppel, supra,* 670 F.2d at 572; *Watkins Motor Lines, Inc. v. ICC,* 641 F.2d 1183, 1189 (5th Cir. 1981); *Environmental Def. Fund v. EPA,* 510 F.2d 1292, 1299 (D.C.Cir.1975). *See also NLRB v. Metropolitan Life Ins. Co.,* 380 U.S. 438, 443, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965) (NLRB orders which change prior positions must be accompanied with adequate explanation for the change).

█ There is adequate support in the statute for the agency's interpretation. The NLRA clearly gives workers the right to express an opinion or to remain silent regarding strikes and other valid union activity.[3] Just as there may be no retaliation for protected union-related speech, there may be no retaliation for union-related silence. Whether the benefits are accrued or unaccrued has nothing to do with this result. The NLRB's decision which we enforce merely holds the company cannot cut off such benefits by presuming participation in a strike when none has been shown.

The case before us does not present the *Emerson Electric* problem of whether A & S benefits may be cut off once a worker expresses support for a strike or joins a picket line while still disabled. We only decide the core question of whether an employer can in effect force a disabled worker to join a strike, absent disavowal, by cancelling A & S benefits that otherwise would be available. Since the NLRA protects silence as well as speech, the Board as a matter of statutory interpretation may properly conclude that it violates the law to condition payment of benefits otherwise payable on an express repudiation of the conduct of other employees. We hold that the NLRB acted within its authority in invalidating Texaco's automatic denial of A & S payments when the strike began.

## III. REMEDY

### A. Dominguez

The Administrative Law Judge (ALJ) determined that Antonio Dominguez was on vacation leave from December 3, 1979 through Friday, January 4, 1980. He had been planning to take another vacation (from his 1980 leave time) to begin Monday, January 7, but he had been hospitalized for diabetes during his December vacation. So, instead of taking his 1980 vacation in January, Dominguez arranged to go on sick leave effective January 7, 1980. Because of a one day waiting period for A & S benefits, Dominguez was on sick leave status without pay for the day of January 7 but was granted A & S benefits for January 8, the last working day prior to the strike. His payments were discontinued on January 9 and were not reinstated. Dominguez's disability ended February 13. The ALJ ordered A & S benefits be restored to Dominguez, with interest, for the uncompensated period of his disability, namely January 10 through February 13. We enforce this portion of the order.

---

**3.** Section 7 of the NLRA, 29 U.S.C. § 157, provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities* except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
(Emphasis added).

## B. Dove

Leon Dove's benefits were terminated on January 8. There was conflicting testimony in the administrative proceedings as to when Dove was released to return to work. Dove's surgeon evidently gave a medical release effective January 7, which was before the strike, but his personal physician advised against an early return to work and gave a medical release effective January 14. The ALJ found the January 14 release date to be the operative medical clearance, and ordered compensation from January 8 through 13.

On appeal before the three-member panel of the NLRB, the agency held that the record did not clearly show whether Dove's medical release was January 7 as submitted by the surgeon or January 14 as submitted by the personal physician. The Board modified the ALJ's order, which had found January 14 as the release date, and deferred the determination of the exact date of Dove's medical release to the compliance portion of the proceedings.

■ The Board's power to alter an ALJ's findings is, of course, not limited to erroneous findings. *NLRB v. Federal Pac. Elec. Co.*, 441 F.2d 765, 769 (5th Cir.1971); *NLRB v. Ra-Rich Mfg. Corp.*, 276 F.2d 451 (2d Cir.1960). The Board is the administrative body which decides. It has the full obligation to determine the merits of the complaint in light of the statute. With undisputed but conflicting evidence in the record, the Board properly required a more detailed determination of Dove's medical release date. *Sign and Pictorial Union Local 1175, Brotherhood of Painters, Decorators and Paperhangers of Amer. v. NLRB*, 419 F.2d 726 (D.C.Cir.1969).

In reviewing the Board's factual determinations, we are limited to deciding whether substantial evidence supports its conclusions. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Helena Laboratories Corp. v. NLRB*, 557 F.2d 1183 (5th Cir.1977).[4] We cannot consider the Board's action here to be unsupported. We therefore leave undisturbed that portion of its order calling for re-evaluation of the date of Dove's medical release.

We uphold the NLRB's order that Texaco give A & S benefits to Dove from the date of the strike until the end of his disability. We note only that if Dove's release from disability was January 7 rather than January 14, the order results in no awardable A & S payments. Only if his release was on January 14 or some other date *after* the January 8 strike began will Dove receive any benefits as a result of the NLRB's order.

## IV. BOARD POST–SUBMISSION OF PROPOSED MODIFICATION ORDER

■ By a letter dated February 4, 1983, the National Labor Relations Board has informed this Court that if this Court enforces its order in this case, because of a later decision it has handed down it "will tender a judgment modifying the Order and Notice by deleting any language indicating that the Company's liability for payment of accrued accident and sickness benefits terminates in the event that a medically excused employee actively supports or participates in any strike activity."

We are constrained to point out that the Order of the NLRB which we here have considered and are prepared to enforce is the Order which is before us. We do not give any consideration nor do we enforce any Order in this case other than that which is the subject of the petition for enforcement brought by the NLRB.

---

4. In cases where the NLRB makes conclusions contrary to the ALJ's own findings, a court of appeals may subject the Board's findings to "particular scrutiny" where "the Board disagrees with some of the credibility choices made by the [administrative law] judge who had the opportunity to see and question the witnesses himself." *NLRB v. Datapoint Corp.*, 642 F.2d 123, 126 (5th Cir.1981). This is not the situation in the case before us, because the Board did not draw its own conclusions from the ambiguous factual record. It merely asked for a fuller evaluation of what the evidence showed the date of the end of Dove's disability to be. The positions of the ALJ and the Board are not in direct opposition.

The letter of February 4, from the NLRB to this Court is completely irrelevant to our consideration of this case and to our decision. The scope of our decision is determined entirely by the wording of the NLRB Order which is before us.

## CONCLUSION

We enforce the order of the National Labor Relations Board holding that Texaco, Inc. committed an unfair labor practice by automatically terminating employee accident and sickness benefits when a strike commenced.

ENFORCED.

E. GRADY JOLLY, Circuit Judge, dissenting:

Because I cannot agree that the benefits here are "accrued" and because I cannot accept the conclusion that the denial of the continued payment of sick benefits is any more "inherently destructive" of employee rights than the denial of wages, and because I do not understand how bad health elevates Section 7 rights, I dissent.

I start from the premise that there is no other principle more free from doubt in the field of labor law than that strikers are not entitled to be paid wages during the course of a strike. The premise that supports this truism is equally applicable to all benefits which are not "accrued," i.e., vested in the employee.[1]  *General Electric Co.,* 80 N.L. R.B. 510 (1948); *Towne Chevrolet,* 230 N.L. R.B. 479 (1977); *Ace Tank and Heater Co.,* 167 N.L.R.B. 663 (1967).

The majority, upon examining the benefits here in question, admits that, even from its point of view, they "do not fall easily into the categories of accrued benefits or wage equivalents." It goes on to candidly admit, however, that the benefits are paid "*only* as a substitute for wages." The employee has no right to receive any payment at the end of the year for unused sick leave, nor does he have any right to claim payment for unused sick leave upon termination of his employment. The striking employee has no right to sick benefits if his illness commenced during the course of the strike. The employee cannot claim the benefits while he is on vacation. The plan is non-contributory and paid solely by the employer. The employer specifically retains the right to require proof of sickness and to determine the employee's eligibility for payment. The employee is not entitled to the benefits when he is on a leave of absence. He is not entitled to the benefits when he is on layoff. In short, the benefits here are not "accrued." He has no right to claim the benefits except as a substitute for wages. The majority opinion sets forth no characteristics that this benefit bears of an "accrued" benefit other than that the period of coverage increases with seniority.[2]

For these reasons it is clear to me these benefits are in the nature of wages and are totally distinguishable from the usual vacation benefits to which, because they are "accrued," the employee is entitled when on strike, on leave of absence, on layoff, or upon termination of employment.

Furthermore, as it is admitted by the Board, there is a complete absence of unlawful anti-union motivation here on the part of Texaco. Consequently, there can only be a violation with respect to either benefit discontinuance or the announcement of its discontinuance if the employer actions are "inherently destructive" of basic employee rights under the theory of violation set forth in *NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). In order for Texaco's conduct to be "inherently destructive" the benefits

---

1. Whether a benefit is accrued is always first a matter of interpreting the particular collective bargaining agreement. Under some agreements, for instance, sick leave benefits may be accrued and under others vacation benefits may *not* be accrued. Usually, as here, vacation benefits are accrued and sick leave benefits are not.

2. The majority only notes further that the A & S benefits "resembled" accrued benefits in the sense that they were payable when a sickness or accident occurs. This analogy loses me. For example, holiday pay is payable when the holiday occurs, but no one would suggest that this characteristic turns holiday pay into an "accrued" benefit.

denied must have been "accrued." On this basis, the Board held that it was "inherently destructive" to advise the employees in a pre-strike letter that those on sick leave who joined the strike would have their sick leave benefits discontinued; yet it would have been perfectly legal to advise employees that if they struck their wages would be discontinued for the period of the strike. The inconsistency and illogic of this conclusion of the Board is fully evident when, as here, it is admitted that the sick leave benefits are only a substitute for wages.

Underpinning the Board's holding that A & S benefits cannot be discontinued is its finding that inquiring of an ill employee whether he has joined the strike constitutes a violation of his Section 7 rights. Such an inquiry merely ascertains whether, under the provisions of the A & S program, the employee continues to be eligible for benefits. The inquiry amounts to nothing more than an effort to determine whether the employee on sick leave would be available for work except for his illness. A healthy employee must of necessity declare his availability for work by either working or not working during the strike. My reading of Section 7 of the Act does not convince me that disabled or ill employees have a greater right to refrain from such a declaration of availability than healthy employees who by their conduct are making an explicit declaration. This is especially true in the circumstances of this case where Texaco has the right under the A & S plan to require proof that illness is the reason for the absence of the employee. Repeating myself, I simply fail to comprehend how sick employees have rights under Section 7 above those of healthy employees so that they have a protected right to remain silent while *all* other employees are declaring themselves.

In conclusion, the practical effect of the majority's holding belies its reasonableness. Under our interpretation and application, not only of the law but of the collective bargaining agreement before us, there is nothing to prevent employees from choosing elective surgery or preventive care requiring confinement commencing two days before the strike and receiving A & S benefits into the period of the strike and for so long as they can find doctors who opine that disabilities to work exist. Such a holding clearly amounts to our placing our imprimatur on the financing of a strike by the employer, a result the majority acknowledges is contrary to law. Such a holding clearly fails to consider the mutual intent of the parties who negotiated the collective bargaining agreement.

For these reasons, I respectfully dissent.