LIVINGSTON POWDERED METAL,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 81-1464.

United States Court of Appeals,
Third Circuit.

Argued Nov. 30, 1981.

Decided Jan. 25, 1982.

Frank Cummings (argued), Alicia M. Kershaw, Marshall, Bratter, Greene, Allison & Tucker, Washington, D. C., for petitioner.

John D. Burgoyne, Asst. Gen. Counsel (argued), Daniel Pollitt, Atty., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., National Labor Relations Board, Washington, D. C., for respondent.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

As this case demonstrates, "better late than never" is not necessarily a reliable adage for a lawyer who represents a client before an administrative agency. The controversy here began when an employer's answer to an NLRB complaint was held untimely because it was received several days after the date it was due to be filed, even though it was mailed on the due date. The Board decided that "late" was the same as "never" and entered a default against the employer. Because the answer alleges defenses that deserve evaluation by the

agency, late filing would not have delayed a hearing, and, because other equities were present, we conclude that the Board abused its discretion in refusing to accept the answer. Accordingly, the case will be remanded to the Board for a determination on the merits.

After General Counsel served a complaint upon petitioner, Livingston Powdered Metal, Inc., the Board granted a request of the company's attorney for an extension to file an answer. When the answer was not received within the allotted time, General Counsel filed a motion for summary judgment. The Board granted the motion based on the averments in the complaint, which were taken as undenied, and held that the company had violated §§ 8(a)(1), (3) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3), (5) (1976). After a motion for reconsideration was denied, the company petitioned for review, and the Board cross-appealed for enforcement.

For some years, Livingston Powdered Metal operated a production plant in Livingston, Tennessee. Its parent company, Brockway Pressed Metals Company, is located in Brockway, Pennsylvania. The complaint alleged that on March 25, 1980, petitioner closed the Livingston plant and moved its operation to Brockway because the United Automobile, Aerospace & Agricultural Implement Workers Union had won a representation election at the Tennessee location during the previous month.

General Counsel alleged that Livingston had unlawfully discharged its employees and had refused to bargain with the union. An answer to the complaint was due on June 26, 1980. When it was not received, a field attorney for General Counsel telephoned the offices of petitioner's attorney, R. Edward Ferraro, at Punxsutawney and Brockway, Pennsylvania, on July 23 and July 24 respectively. Unable to reach him by telephone, the field attorney sent Ferraro a letter on July 24, stating that General Counsel "may file a Motion for Summary Judgment" if an answer was not forthcoming.

Ferraro wrote to the Board on July 31, asking it to extend the time for the answer to Monday, August 11, 1980. In a letter to the attorney's Brockway office dated August 6, 1980, the Board replied that summary judgment would not be sought "if your answer is filed not later than August 11, 1980."

In a letter dated Friday, August 8, 1980, but not mailed until Monday, August 11, Ferraro wrote from his Brockway office, "[p]er your letter of August 6, 1980, which we just received, we enclose herewith an Answer to the Complaint...." The letter and answer were not received at the Board's office until August 18, 1980. Ferraro had also mailed copies of his letter and answer on August 11, 1980 to the union in Nashville, Tennessee, where they were delivered on August 13, 1980.

On the same day the answer was received, the regional attorney sent a motion for summary judgment to the Board. On the next day, he acknowledged receipt of the answer and asked Ferraro to send four additional copies, which he did promptly.

The Board then issued a notice to show cause why the motion for summary judgment should not be granted. Ferraro responded that the company was not responsible for the delay in the mails, and noted that the letter to the union in Tennessee arrived on August 13, 1980—before General Counsel's office had begun preparation of the summary judgment motion. He also stated that financial losses—not union representation—compelled the closing of the plant, and furthermore that Livingston was "no longer an operating manufacturer at any location."

The answer to the complaint and the response to the show cause notice repeated substantially the defenses that Ferraro had included in a letter to the Board in April 1980. At that time the Board was investigating charges by the union similar to those presented here.[1]

1. The earlier charges were withdrawn on May 9, 1980.

On December 5, 1980, the Board found that petitioner had failed to show good cause for its failure to file the answer by August 11, and, therefore, the allegations of the complaint were deemed to be true. The company was ordered, *inter alia*, to reopen the plant, reinstate the employees, and bargain with the union about the plant closure as well as wages and conditions of employment.

Livingston then employed new counsel who promptly filed a motion for reconsideration. As grounds for setting aside the default, the company asserted that Ferraro had a small, rural law office and had never handled an administrative appeal of this nature. The company also contended that, on the basis of a telephone discussion with the NLRB field attorney on August 6, Ferraro believed that time was not of the essence, and that he had never been told that August 11 was an absolute deadline.

An affidavit averred that Ferraro's father, a coal mine operator, died on May 28, 1980. As a result, much of Ferraro's legal work was delayed because he was obliged to assume his father's business duties. Another affidavit in the record from Livingston's president stated that the decision to close the plant was caused by "severe losses and pressures applied by the financial institutions who had loaned money" to the company. If the Board's order were carried out, the affidavit said, "it would bankrupt Livingston Powder Metal" and "there would be dire financial effects not only on Livingston Powdered Metal, but Brockway Pressed Metals, the parent company."

The Board denied the motion for reconsideration on March 17, 1981 as "without merit." In this court, the Board contends that it did not abuse its discretion in granting the default and that judicial review is precluded by § 10(e) of the National Labor Relations Act. On the other hand, the company asserts that it was deprived of a fair hearing by the Board's arbitrary and capricious action and that good cause was shown for the delay in filing the answer.

As authorized by the Act, the Board has promulgated rules for processing its cases. 29 U.S.C. § 156. These rules provide that they "shall be liberally construed to effectuate the purposes and provisions of the act." 29 C.F.R. § 102.121.

The rules specify that an answer to the complaint must be filed within ten days, *id.* at § 102.20, but the time may be extended by the regional director, *Id.* at § 102.22. If no answer is filed, "allegations in the complaint, . . . shall be deemed to be admitted to be true and shall be so found by the Board, unless *good cause* to the contrary is shown." *Id.* at § 102.20. (Emphasis added). If an answer is filed, it may be amended at any time before the hearing. *Id.* at § 102.23.

The Board's position is based on Section 10(e) of the Act, 29 U.S.C. § 160(e), which states, in pertinent part, that:

> "no objection that has not been urged before the Board, its member, agent or agency, shall be considered by the court unless the failure or neglect to urge such objection shall be excused, because of extraordinary circumstances . . . ."

29 U.S.C. § 160(e). The Board argues that § 10(e) applies to this case and the company has failed to demonstrate "extraordinary circumstances to excuse its failure to file a timely answer." Livingston contends, however, that the "good cause" standard of § 102.20 applies and that the Board abused its discretion in refusing to accept the answer. The company asserts that it objected on two separate occasions to the Board's refusal to accept the answer but was denied relief.

In *NLRB v. Zeno Table Co.*, 610 F.2d 567 (9th Cir. 1979), the late filing of an answer in an agency proceeding was also at issue. The court refused to apply the "extraordinary circumstances" standard of § 10(e), finding instead that the Board was required to use the "good cause" test. The court emphasized that the purpose of the good cause standard "is to ensure that the Board makes decisions on the merits despite technical and inadvertent noncompliance with procedural rules." *Id.* at 569.

■ We agree with the Ninth Circuit that the less stringent standard of "good cause" applies to the late filing of an answer as opposed to the "extraordinary circumstances" test that governs the failure to file exceptions. Section 10(e) is intended to prevent a litigant from raising a matter in the courts which had never been presented to the Board for its consideration—a circumstance not present in this case. The company did bring the matter to the Board's attention so that it had the opportunity to rule on the question. Accordingly, the statutory purpose has been served and we reject the Board's contention that § 10(e) bars our review here.

In his response to the motion for summary judgment, Ferraro disclaimed responsibility for delay in the mails. He noted that the union received a copy of the answer within two days after it was posted, while it took several more days to reach the Board in Washington.

The Board, however, does not base its case solely on the fact that the answer was received seven days late. Its position, as we understand it, is that a pleading mailed on the day designated for filing is always delinquent, because in no event could it reach the Board before the end of the business day. *See Kiekhaefer Corp. v. NLRB*, 273 F.2d 314 (7th Cir.), *cert. denied*, 362 U.S. 950, 80 S.Ct. 861, 4 L.Ed.2d 868 (1960). However, an answer will be accepted if it is mailed before the final date, even though late on arrival. This concession is in harmony with our decision in *NLRB v. Marshall Maintenance Corp.*, 320 F.2d 641 (3d Cir. 1963). There, we held that exceptions mailed before the due date, but delayed because of changes in post office schedules, were nevertheless timely, even under the "extraordinary circumstances" standard of § 10(e). As we will show, the equities in this case that counsel acceptance of the answer—even though it was not mailed until the due date of the extension period—are much stronger than those in *Marshall Maintenance.*

■ Although the Board's action was nominally a summary judgment, it was in reality a default. In a summary judgment proceeding, there is no dispute about the relevant facts. In a default, however, the defendant's contentions are not considered, but rather the *ex parte* allegations of the adversary are accepted as true. The possibility that an injustice may occur is much more likely in those circumstances since the controversies are decided upon a procedural technicality instead of a ruling on the merits. Therefore, in a default case, more exacting judicial scrutiny is in order.

■ We find the cases in which we have had occasion to pass upon the standard for opening default judgments in the district courts to be helpful here. The interests of a litigant in an administrative proceeding are as worthy of protection as those in a district court, and a less demanding standard should not be applied to agency action when otherwise an injustice may result. The stakes for Livingston are as high if not higher than those in the district court cases we have reviewed.

*Medunic v. Lederer*, 533 F.2d 891 (3d Cir. 1976), held that two questions must be considered: (1) whether there would be prejudice to the plaintiff, and (2), whether a meritorious defense had been asserted by the defendant. We held that in answering those questions, a standard of liberality rather than strictness should be applied, and any doubt should be resolved in favor of setting aside the judgment "so that cases may be decided on their merits." *Id.* at 894. Moreover, as we indicated in *Medunic* and in *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d at 242 (3d Cir. 1951), and as held elsewhere in *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir.1980), whether the default was willfully caused by defendant is a relevant factor. Here, Livingston did not willfully or intentionally cause the default.

In *Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966), we emphasized that "this court has clearly stated its reluctance to permit the final disposition of substantial controversies by default." On another occasion, we cautioned that "matters involving large sums should not be determined by default

judgment if it can reasonably be avoided," since "the interests of justice are best served by a trial on the merits." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951). The latter case held that the failure of the district court to set aside a default judgment was an abuse of discretion.

Although Attorney Ferraro's representation in this case was not as diligent as is normally expected, certain countervailing points should be weighed. The Board should have given some consideration to Ferraro's inexperience in Board cases, and the disruption of his practice caused by his personal problems. Lack of expertise is not uncommon among general practitioners who have little opportunity to participate in administrative proceedings. Furthermore, in contrast to the situation presented in *Zeno Table*, nothing here suggests that the attorney is "a chronic late filer or a promoter of vexatious and dilatory proceedings." 610 F.2d at 569.

Moreover, the delay in filing the answer was not shown to be a factor which would have delayed the ultimate resolution of the case on the merits. The complaint recited that a hearing date was set for October 20, 1980. The fact that the answer was not filed until August 8, 1980 would not have required a continuance of the hearing, and the company had not requested any such delay.

Most compelling, however, is the fact that Livingston has been barred from presenting what appears on its face to be a meritorious defense that might prevent imposition of the sweeping remedy decreed. The Board has not challenged the company's contentions that it was forced to close the plant because of business losses and pressures from creditors—matters presumably capable of documentary proof. Livingston asserts that the remedy prescribed will have "dire" financial consequences, not only for itself but for the parent company as well, threatening the job security of its unionized work force in Brockway. Imposing a far-reaching remedy on an employer when justified by a violation is one thing, but to do so because its attorney was one business day late in mailing an answer is quite another.

It should be emphasized that Livingston's defense could come as no surprise to General Counsel. Ferraro's letter to the Board in April, 1980 put on record that the company's alleged reason for closing its Tennessee plant was not anti-union animus. Ignoring such contentions already in the file, and entering a default judgment instead, is unlikely to inspire confidence in the fairness of the Board's proceedings.

An additional factor is pertinent to the charge filed in this case. On June 22, 1981, some three months after the petition for review was filed in this court, the Supreme Court decided *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981), holding that an employer is not required to bargain with a union about a partial closing of a business. We are not in a position now to determine whether that decision governs the case at hand, but the holding will have to be considered when the Board reviews the merits.

We recognize that an administrative agency like the NLRB, burdened with an extremely heavy caseload, must necessarily rely upon compliance with procedural rules to function efficiently. As part of the process, reasonable time limitations must be set and observed. Nevertheless, there are instances where wooden and unreasoning insistence upon technical procedural rules results, not in the proper disposition of a cause, but in injustice. Failure to take remedial measures when such incidents occur constitutes an abuse of discretion.

In summary, the answer mailed on the last day of the designated period set out a meritorious defense to very serious charges, and permission to file it would not have delayed the previously scheduled hearing. We hold, therefore, that the circumstances here constitute good cause to allow the pleading to be filed. The defense should have been evaluated after a fair review on the merits, not foreclosed by a too hasty default. As Judge Kalodner said in *NLRB v. Marshall Maintenance Corp.*, 320 F.2d at

645, "the zeal of the Board in demanding inflexible adherence to the strict letter of the law, evidenced in the instant case, might well have been expended in a worthier cause."

The petition for enforcement is denied. The petition for review is granted, and the case is remanded to the Board for a hearing on the merits. Each party to bear its own costs.