**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2120 & 20-2233

EAST BRUNSWICK EUROPEAN WAX CENTER, LLC

v.

NATIONAL LABOR RELATIONS BOARD

East Brunswick European Wax Center, LLC,
Petitioner in No. 20-212
National Labor Relations Board,
Petitioner in No. 20-2233
_____

On Application for Enforcement and Cross-Petition for
Review of an Order of the National Labor Relations Board
(NLRB-1 No. 22-CA-178646)
_____

Argued October 26, 2021

BEFORE:  GREENAWAY, JR., PHIPPS, and COWEN,
<u>Circuit</u> <u>Judges</u>

(Filed: January 11, 2022)
_____

Carmen M. Finegan
Law Office of Gerard C. Vince
1040 Amboy Avenue
Edison, NJ 08837

David Jasinski (argued)
3rd Floor
2 Hance Avenue
Tinton Falls, NJ 07724

    Attorneys for Petitioner in Nos. 20-2120 and Respondent in 20-2233

Jennifer A. Abruzzo, General Counsel
Julie B. Broido
David Habenstreit
David A. Seid (argued)
National Labor Relations Board
1015 Half Street, S.E.
Washington, DC 20003


    Attorneys for Respondent in Nos. 20-2120 and Petitioner in 20-2233
_____

OPINION OF THE COURT
_____


COWEN, Circuit Judge.

East Brunswick European Wax Center, LLC ("EBEWC") petitioned for review of the decision and order of the National Labor Relations Board ("Board"). The Board, in turn, cross-applied for enforcement of its order. In its decision and order, the Board granted the General Counsel's motion for default judgment because EBEWC had defaulted on the terms of the settlement agreement ("Settlement Agreement") by failing to "fully comply" with the Settlement Agreement's "Electronic Notification" provision requiring EBEWC to text the requisite notice to its employees ("Notice"). Pursuant to the Settlement Agreement, the Board then found that the allegations set forth in the reissued complaint were true, made findings of fact and conclusions of law consistent with the pleading's allegations, and granted the General Counsel's request for a "full remedy" for the violations the Board found.

However, the Board took such drastic action even though EBEWC had purportedly "defaulted" on the terms of the Settlement Agreement merely by sending the requisite Notice to its employees by e-mail instead of by text message. The Settlement Agreement did explicitly provide for the Notice to be sent by text. But there is no indication that texting as opposed to some other method of electronic communication (such as e-mailing) had any real significance to EBEWC, its employees, or the Board itself—and EBEWC otherwise fully complied with its other obligations under the Settlement Agreement. Because the agency overreached and acted punitively, we will grant EBEWC's petition for review and will deny the Board's application for enforcement.

I.

This proceeding arises out of charges of unfair labor practices filed by a former EBEWC employee named Kellie

3

Meagan Zambrano. EBEWC operates a beauty and waxing salon in East Brunswick, New Jersey. On November 30, 2016, the General Counsel issued a complaint alleging that EBEWC had violated Section 8(a)(1) and (3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (3), by implying that employees would be discharged if they engaged in union or protected concerted activity, soliciting employee assistance in ascertaining the union and protected activities and support of their co-workers, issuing a handbook rule subjecting employees to discipline for gossiping or complaining about EBEWC's rules or procedures, prohibiting employee discussion of ongoing internal investigations, discharging Zambrano for engaging in concerted employee activities including discussion and texting with her co-workers regarding the terms and conditions of employment, and issuing a final written warning to employee Liz Siebold.[1] The complaint sought an order requiring, among other things, EBEWC to read and post a remedial notice. In the remedy section, the pleading also stated that, "since Respondent communicates with its employees by text message, the General Counsel seeks an Order requiring that Respondent send the notice to employees to its employees by text message, such text to contain an explanation of the notice as directed by the Board." (A21.)

On December 19, 2016, EBEWC signed an informal settlement agreement, which Zambrano had signed on November 30, 2016 and the Regional Director then approved on January 3, 2017. As the Board observed in its decision, EBEWC agreed to:

---

[1] While the complaint, Settlement Agreement, and other documents spell her name "Siebold," her employment records spell it "Sebold."

(1) post at its facility the appropriate Board notice for 60 days; (2) send the notice by text message to all employees who work at the facility; (3) read, or have a Board Agent read, the notice; (4) comply with all the terms and provisions of the notice, including rescinding handbook rules prohibiting talking or complaining about wages, hours, and working conditions or the Respondent's rules, policies, and/or procedures and rescinding the final warning issued to Liz Siebold; (5) make Kellie Zambrano whole by paying her $20,000 in backpay and interest; (6) remove from its files all references to Zambrano's discharge, and inform Zambrano in writing that it had been done; and (7) notify the Regional Director in writing what steps the Respondent had taken to comply with the settlement.

E, Brunswick European Wax Ctr., 369 NLRB No. 77, 2020 WL 2476669, at *1 (May 13, 2020). The Settlement Agreement also included a "**Non-Admission Clause**." (A24 ("By entering into this Settlement Agreement, the Charged Party does not admit that it has violated the National Labor Relations Act.").) But it was also agreed as to the "**SCOPE OF THE AGREEMENT**" that the Settlement Agreement "settles only the allegations in the above-captioned case(s)" (including all the allegations covered by the attached Notice made part of the Settlement Agreement) "and does not settle any other case(s) or matters." (A24-A25 ("It does not prevent persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters that happened before this Agreement was approved regardless of whether General Counsel knew of those matters or could have

5

easily found them out. The General Counsel reserves the right to use the evidence obtained in the investigation and prosecution of the above-captioned case(s) for any relevant purpose in the litigation of this or any other case(s), and a judge, the Board and the courts may make findings of fact and/or conclusions of law with respect to said evidence.").)

The Settlement Agreement set forth the following requirement governing electronic notification:

> **ELECTRONIC NOTICE.**—The Charged Party will send a copy of the signed Notice in English and in additional languages if the Regional Director decides that it is appropriate to do so, by text to all employees who work at the facility located at [address]. The message of the text transmitted with the Notice will state: "We are distributing the Attached Notice to Employees to you pursuant to a Settlement Agreement approved by the Regional Director of Region 22 of the National Labor Relations Board in Case(s) 22-CA-178646." The Charged Party will forward a copy of that text, with all of the recipients' phone numbers, to the Region's Compliance Officer at [e-mail address].

(A24.) Under the heading "**PAYMENT OF WAGES AND BENEFITS**," it was agreed that: "Within 14 days from approval of this agreement, the Charged Party will make whole the employee(s) named below by payment to each of them of the amount opposite each name. The Charged Party will make appropriate withholdings for each named employee. No withholdings should be made from the interest portion of the backpay. Kellie Zambrano $20,000.00" (Id.) In the

6

"**NOTIFICATION OF COMPLIANCE**" provision, the parties to the Settlement Agreement agreed that they "will notify the Regional Director in writing what steps the Charged Party has taken to comply with the Agreement." (A25.) "This notification shall be given within 5 days, and again after 60 days, from the date of the approval of this Agreement," and "[n]o further action shall be taken in the above captioned case(s) provided that the Charged Party complies with the terms and conditions of this Settlement Agreement and Notice." (Id.)

Furthermore, the Settlement Agreement included a specific provision addressing "**PERFORMANCE**":

> Performance by the Charged Party with the terms and provisions of this Agreement shall commence immediately after the Agreement is approved by the Regional Director, or if the Charging Party does not enter into this Agreement, performance shall commence immediately upon receipt by the Charged Party of notice that no review has been requested or that the General Counsel has sustained the Regional Director.

> The Charged Party agrees that in case of non-compliance with any of the terms of this Settlement Agreement by the Charged Party, and after 14 days' notice from the Regional Director of the National Labor Relations Board of such non-compliance without remedy by the Charged Party, the Regional Director will issue a Complaint that includes the allegations covered by the Notice to Employees, as identified above in the Scope of Agreement section, as well as filing and service of the charge(s), commerce

7

facts necessary to establish Board jurisdiction, labor organization status, appropriate bargaining unit (if applicable), and any other allegations the General Counsel would ordinarily plead to establish the unfair labor practices. Thereafter, the General Counsel may file a Motion for Default Judgment with the Board on the allegations of the Complaint. The Charged Party understands and agrees that all of the allegations of the Complaint will be deemed admitted and that it will have waived its right to file an Answer to such Complaint. The only issue that the Charged Party may raise before the Board will be whether it defaulted on the terms of this Settlement Agreement. The General Counsel may seek, and the Board may impose, a full remedy for each unfair labor practice identified in the Notice to Employees. The Board may then, without necessity of trial or any other proceeding, find all allegations of the Complaint to be true and make findings of fact and conclusions of law consistent with those allegations adverse to the Charged Party on all issues raised by the pleadings. The Board may then issue an Order providing a full remedy for the violations found as is appropriate to remedy such violations. The parties further agree that a U.S. Court of Appeals Judgment may be entered enforcing the Board Order ex parte, after service or attempted service upon Charged Party at the last address provided to the General Counsel.

(A25.)

In a January 6, 2017 letter, the Region 22 compliance officer summarized EBEWC's obligations under the Settlement Agreement, specifically that it must post the enclosed Notice to Employees, read the Notice to Employees in the presence of a Board agent, send a copy of the signed Notice "by text" to all employees who work at the facility, and complete and return the enclosed certification of compliance forms (with the first part due January 20, 2017 and the second part due by February 6, 2017). The compliance officer also indicated that the terms of the Settlement Agreement and Notice should be read carefully because EBEWC was "expected to comply with all such provisions." (A45 ("If you have any questions or if I can assist you, please let me know.").) "Specifically, the Settlement Agreement requires" EBEWC to make Zambrano whole by payment in the amount of $20,000.00 (no later than January 17, 2017). (Id.)

By letter dated February 1, 2017, the compliance officer reminded EBEWC of its obligations:

> As you are aware, the terms of the Agreement require, among other things, that your client, European Wax Center of East Brunswick, post a notice to employees for 60 days, read the notice aloud to employees in the presence of a Board agent, distribute the notice electronically to employees, pay Kellie Zambrano a total of $20,000 in the method described in my January 6, 2017 opening compliance letter to you, and remove from its files any reference to Ms. Zambrano's discharge and notify her in writing that this has been done and that the discharge will

9

not be used against her in any way.. [sic] Additionally, the Employer is required to complete and return to me the Certification of Compliance, Part One and Part Two forms, along with a signed and dated copy of the notice. To date, the Region has received none of the required items from the Employer or any indication that the Employer intends to comply with the Settlement Agreement.

(A51.) EBEWC was advised that it must comply with the provisions of the Settlement Agreement and arrange a date for the compliance officer to visit its facility for the notice reading "to take place no later than "**February 15, 2017**." (Id.) "Absent receipt of the backpay and the above-described actions by this date, and without further notice to you, I will recommend to the Regional Director that he revoke the Settlement Agreement." (Id.)

On March 20, 2017, the compliance officer acknowledged by e-mail receipt of the backpay and interest check for Zambrano and stated that, given this receipt, the Regional Director was reluctantly willing to give EBEWC two more weeks (i.e., by April 4, 2017) to comply with the Settlement Agreement's remaining provisions. According to this e-mail, those outstanding items were: (1) posting of the Notice; (2) reading of the Notice aloud to the employees; (3) completing and returning the certification of compliance forms; and (4) purging Zambrano's personnel file of any reference to her discharge (and notifying Zambrano in writing that this was done and that her discharge would not be used against her). According to the e-mail, no further extensions of time would be granted. In a follow-up e-mail dated the same day, the

10

compliance officer added the requirement that Siebold's written discipline be purged from her personnel file (with written confirmation to the Region that this step was completed).

On May 9, 2017, a compliance assistant identified by e-mail the outstanding items required "to comply with the [remaining] provisions of the Settlement Agreement." (A90.) These were posting of the Notice, reading of the Notice aloud to employees, submission of the certification of compliance forms, and purging Zambrano's personnel file of all references to her discharge (with written confirmation to the Region that this was done).

On June 12, 2017, the Region's compliance officer read the Notice to the employees at the facility. In an e-mail dated June 19, 2017, the compliance officer stated, among other things, that:

> **There are remaining items that must be completed by the end of this week by the Employer:**
>
> 1. The notice to employees must be sent via text to all wax associates and general service associates and the text must say "We are distributing the attached Notice to Employees to you pursuant to a Settlement Agreement approved by the Regional Director of Region 22 of the National Labor Relations Board" with the notice attached.

(A57.) She also asked EBEWC to rescind Siebold's final warning, remove references to Zambrano's discharge from its files (and inform Zambrano of this action), and complete and

11

return the relevant forms by June 23, 2017. According to the compliance officer, "[t]he Employer signed this settlement agreement on December 19, 2016 and has been given a generous amount of time to comply with the terms." (A58.) She warned that "[t]he Region will have no choice but to move forward with seeking a default judgment if these remaining provisions of the settlement have not been completed by the end of this week." (Id.)

On July 31, 2018, the Regional Director reissued the complaint. In addition to setting forth the allegations of unfair labor practices included in the original complaint, the reissued complaint alleged that EBEWC had failed to fully comply with all of the terms of the Settlement Agreement by:

1. Failing to remove from its files reference to Zambrano's discharge and notifying her it has done so.

2. Failing to rescind Liz Siebold's final warning.

3. Failing to text the Notice to its employees; and

4. Failing to return the required Certification of Compliance forms to the Region to document the steps Respondent took to comply with the Settlement Agreement.

(A29.) As part of the remedy for the alleged unfair labor practices, "and since Respondent communicates with its employees by text message, the General Counsel seeks an Order requiring that Respondent send the notice to employees to its

12

employees by text message, such text to contain an explanation of the notice as directed by the Board." (A34.)

The General Counsel also filed on the same day a motion for default judgment, asking the Board to issue a decision and order against EBEWC containing findings of fact and conclusions of law based on the allegations of the reissued complaint, and "ordering [EBEWC] to fully remedy the unfair labor practices found, and granting such other, further relief as may be proper in the circumstances." (A36.) After summarizing the history of this proceeding and specifically addressing how EBEWC had failed to comply with the terms of the Settlement Agreement, the General Counsel alleged that "the Settlement Agreement provides that in the event of non-compliance, the Board may issue an order providing a full remedy for the violations found as is appropriate to remedy such violations and that a U.S. Court of Appeals Judgment may be entered enforcing the Board order." (A40.) "As a result of Respondent's default, the General Counsel seeks an Order requiring Respondent to fulfill all of its remaining undertakings in the January 3, 2017 Settlement Agreement." (Id.) The General Counsel thereby moved that the Board find that: (1) EBEWC had waived its right to file an answer to the reissued complaint under the terms of the Settlement Agreement, that all allegations of the reissued complaint be deemed to be true, and that no hearing was necessary; (2) find that EBEWC had violated Section 8(a)(1) and (3) as alleged in the reissued complaint; (3) issue a decision and order containing findings of fact and conclusions of law based on (and in accordance with) the reissued complaint's allegations "and provide a full remedy for the unfair labor practices alleged"; and (4) "[g]rant any such other, further, and different relief as may be appropriate and proper to remedy the allegations in the reissued Complaint."

13

(A40.)

On August 3, 2018, the matter was transferred to the Board, and the Board issued a notice to show cause why the General Counsel's motion should not be granted.

On August 16, 2018, counsel for EBEWC sent the General Counsel's attorney a letter explaining that her client had complied with its obligations under the Settlement Agreement:

> Kindly find enclosed the Competed [sic] Compliance Forms (Part One and Two) with attached: Exhibit "A" (copy of e-mail communication sent to all employees with Notices pursuant to the Settlement Agreement); Exhibit "B" (copy of e-mail confirming Manager, Shani Guadalupe's reading of the Notice on April 7, 2017); Exhibit "C" (e-mail communications confirming Ms. Ficke's [sic] Notice Reading at European Wax Center on June 12, 2017); Exhibit "D" (copy of the check issued to Ms. Zambrano on February 7, 2017 and mailed to the NLRB on March 6, 2017); and Exhibit "E" (copy of the recent correspondence sent to Ms. Zambrano confirming expungement of file per Settlement Agreement in February 2017).

(A71.) Counsel also indicated that, as to the rescission of Siebold's final warning, Siebold had voluntarily terminated her employment (her last day was July 29, 2016) and all reference to the final warning was removed from her file (a copy of which was enclosed as Exhibit F). "It is my understanding that the enclosed confirms that European Wax Center of East Brunswick is fully compliant with its obligations under the terms of the

14

Settlement Agreement in this matter. Kindly confirm that the pending Notice to Show Cause will be withdrawn and no further steps are required on behalf of our client." (Id.)

The first part of the attached certification of compliance forms contained an "**Electronic Distribution**" section stating that: "The signed and dated Notice to Employees in the above captioned matter was distributed electronically on (date) . . . by the following means. (State means of distribution **and attach proof.**). . ." (A72.) In handwriting, a date was provided (April 7, 2017), and EBEWC stated: "**SEE COPY OF EMAIL WITH FOUR (4) ATTACHED DOCUMENTS ATTACHED HERETO AS EXHIBIT 'A.'**" (Id.)

In turn, Exhibit A included an e-mail dated April 7, 2017 from EBEWC to its employees entitled "Meeting Notes 4/7/17." (A76.) The "**Topics discussed**" listed the following item: "Everybody please follow me into the call center to read important documents and also see attachment. Any questions, please come to me." (A77.) The Notice was then attached to the e-mail.

On August 17, 2018, EBEWC filed its opposition to the reissued complaint, motion for default judgment and issuance of decision and order, and the notice to show cause. In support of its opposition, it "avers that the alleged deficiencies were all addressed and complied with as set forth in the recent submissions to [the attorney for the General Counsel]." (A66.) A copy of the August 16, 2018 letter and its exhibits were attached to the opposition. EBEWC thereby requested that the Board deny the relief requested, find that it had fully satisfied the terms and conditions of the Settlement Agreement, and enter a final dismissal in this case.

15

On May 13, 2020, a three-member panel of the Board issued its decision and order. First, it rendered the following "Ruling on Motion for Default Judgment":

In its response to the Notice to Show Cause, the Respondent contends that the Motion for Default Judgment should be denied and the reissued complaint should be dismissed because the documents attached to its response to the Notice to Show Cause, which consist of copies of completed compliance forms, an email communication to employees, a copy of an email stating that Manager Shania Guadalupe read the notice on April 7, 2017, email communication confirming the compliance officer's reading of the notice on June 12, 2017, a copy of the check issued to Zambrano, a copy of the correspondence sent to Zambrano confirming expungement of the discharge from her personnel record, and a copy of Siebold's file with all references to the final written warning she received removed, show "that the alleged deficiencies were all addressed and complied with."

Although the Respondent asserts that it has complied with the settlement agreement, the Respondent has not established that it has sent the notice to employees by text message to employees. As noted above, the noncompliance provision in the settlement agreement provides that "[t]he only issue that the Charged Party may raise before the Board will be whether it defaulted on the terms of this Settlement Agreement." As

16

described, the Respondent has not shown that it has fully complied with that agreement. The settlement agreement further provides that "[t]he Board may then, without necessity of trial or any other proceeding, find all allegations of the Complaint to be true and make findings of fact and conclusions of law consistent with those allegations adverse to the Charged Party on all issues raised by the pleadings." Therefore, because the Respondent has not established that it complied with all of the terms of the settlement agreement, we find that Respondent has failed to raise any material issue of fact warranting a hearing. [Footnote 1: The Respondent also has not established that it has rescinded the handbook rules prohibiting talking or complaining about wages, hours, and working conditions or the Respondent's rules, policies, and/or procedures. However, the Region has not cited this as a basis for default, either in its Motion for Default Judgment or its communications with the Respondent, and therefore we do not rely on it here.]

Accordingly, we grant the General Counsel's Motion for Default Judgment and find, pursuant to the non-compliance provision of the settlement agreement set forth above, that all of the allegations in the reissued complaint are true. [Footnote 2: See U-Bee, Ltd., 315 NLRB 667 (1994).]

EBEWC, 2020 WL 2476669, at *3.  Based on this default, the Board then made findings of fact and conclusions of law on the underlying unfair labor practices alleged in the reissued complaint.

"Having found that the Respondent has engaged in certain unfair labor practices, and in accordance with the General Counsel's request for a 'full remedy' for the violations found, we shall order the Respondent to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act."  Id. at *5.  In a footnote, the Board added that, "[t]o the extent that the Respondent has already complied with some of the ordered remedies, it shall not be required to do so again."  Id. at *5 n.3 (citing Able Bldg. Maint., 367 NLRB No. 134, 2019 WL 2176671 (May 16, 2019) ("ordering respondent to, inter alia, make a discriminatee whole 'to the extent that the Respondents have not already done so.'")).

The Board ordered EBEWC to cease and desist from the unfair labor practices and from, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their rights.  It also directed EBEWC to rescind the policies the Board found unlawful, to expunge from its files any discipline against employee Seibold and any reference to Zambrano's discharge and to notify them of those actions, and to offer Zambrano full reinstatement to her former job and make her whole for any loss of earnings or other benefits (including backpay with interest, search-for-work and interim employment expenses with interest, and compensation for any adverse tax consequences for receiving a lump-sum backpay award).  The Board further noted that, "although Zambrano waived reinstatement for the purposes of the settlement, we shall order it as part of a full remedy for her unlawful discharge."  Id. at *5

18

n.4. Additionally, "[b]ecause it is unclear whether the total amount set forth in the settlement agreement constitutes a full make-whole remedy, we leave to compliance a determination of the proper amount due to Zambrano." Id. at *5 n.5; see also id. at *5 n.6 (rejecting General Counsel's request for reasonable consequential damages because issue (which was not briefed) would involve a change in Board law and Board was unprepared to deviate from its current remedial practice at this time). The order, in turn, required EBEWC to post the remedial notice, distribute it by text message, and have it read at an employee meeting. "[S]ince the Respondent communicates with its employees by text message, we shall require the Respondent to send the notice to its employees by text message. See, e.g., Pacific Green Trucking, Inc., [368 NLRB No. 14, 2019 WL 2715425 (June 27, 2019)]." Id. at *6. Finally, EBEWC had to certify compliance with its obligations.

## II.

The Board had jurisdiction over this proceeding pursuant to 29 U.S.C. § 160(a). We have jurisdiction over the petition for review and the application for enforcement under 29 U.S.C. § 160(e) and (f).

According to the Board, we review its decision to grant default motions for abuse of discretion. For its part, EBEWC asserts that we review the Board's legal decisions de novo. However, EBEWC points to this Court's ruling in Livingston Powdered Metals, Inc. v. NLRB, 669 F.2d 133 (3d Cir. 1982), in support of its argument that the Board erred in its interpretation of the Settlement Agreement. Livingston Powdered Metals involved the Board's entry of a default where the employer's answer to the complaint was mailed on the due date and received several days later. Id. at 133. "Because the

19

answer alleges defenses that deserve evaluation by the agency, late filing would not have delayed a hearing, and, because other equities were present, we conclude that the Board abused its discretion in refusing to accept the answer."  Id. at 133-34.  "Although the Board's action was nominally a summary judgment, it was in reality a default."  Id. at 136.  We emphasized that, "in a default case, more exacting judicial scrutiny is in order."  Id.  "In a summary judgment proceeding, there is no dispute about the relevant facts.  In a default, however, the defendant's contentions are not considered, but rather the ex parte allegations of the adversary are accepted as true."  Id.  Accordingly, "[t]he possibility that an injustice may occur is much more likely in those circumstances since the controversies are decided upon a procedural technicality instead of a ruling on the merits."  Id. (further relying on standard for opening district court default judgments); see also, e.g., id. at 137 ("In summary, the answer mailed on the last day of the designated period set out a meritorious defense to very serious charges, and permission to file it would not have delayed the previously scheduled hearing.  We hold, therefore, that the circumstances here constitute good cause to allow the pleading to be filed.").  As EBEWC recognized:  "[T]his Court stated, 'there are instances where wooden and unreasoning insistence upon technical procedural rules results, not in proper disposition of a cause, but in injustice.  Failure to take remedial measures when such incidents occur constitutes an abuse of discretion.'" (Petitioner's Brief at 17 (quoting Livingston Powdered Metal, 669 F.2d at 137).)

Section 10(c) of the NLRA authorizes the Board, upon finding the existence of unfair labor practices, to order the violator "to cease and desist" from the violations found and "take such affirmative action . . . as will effectuate the policies

of [the Act]." 29 U.S.C. § 160(c). The statute vests in the Board "the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898-99 (1984); see also, e.g., St. John's Gen. Hosp. of Allegheny-ADR Ctr. v. NLRB, 825 F.2d 740, 746 (3d Cir. 1987) (stating that Board has broad discretionary power to fashion remedies for unfair labor practices subject to limited review). But the Board's authority is thereby limited to remedial actions and does not extend to punitive measures. The NLRA's "purpose is the 'protection of employees and the redress of their grievances . . . after the employees have been made whole.'" Quick v. NLRB, 245 F.3d 231, 254-55 (3d Cir. 2001) (quoting Republic Steel Corp. v. NLRB, 311 U.S. 7, 11 (1940)). "Accordingly, it has long been recognized that the NLRB's 'power to command affirmative action is remedial, not punitive.'" Id. at 255 (quoting Republic Steel, 311 U.S. at 12).

As the Supreme Court explained in 1940, "[t]he Act is essentially remedial" and accordingly does not set forth a penal or punitive scheme prescribing fines and penalties for violating public rights. Republic Steel, 311 U.S. at 10. "We do not think that Congress intended to vest in the Board a virtually unlimited discretion to devise punitive measures, and thus to prescribe penalties or fines which the Board may think would effectuate the policies of the Act." Id. at 11. "[The Board's] 'authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices, even though the Board be of the opinion that the policies of the Act might be effectuated by such an order.'" Id. at 11-12.

We exercise plenary review over questions of law, deferring to the Board on interpretation of labor matters. See, e.g., Atl. Limousine, Inc. v. NLRB, 243 F.3d 711, 715 (3d Cir. 2001). In any event, default or compliance with a settlement agreement does not implicate a uniquely labor-related question, and we accordingly see no need to defer to the Board with respect to such issues.

III.

EBEWC raises several overlapping arguments for why this Court should grant relief from the Board's decision and order. Attacking the Board for taking "a sledgehammer to an agreement where a chisel would have sufficed if Petitioner had breached (which it did not)," it asks us to review "[w]hether Petitioner substantially complied with the terms of the Settlement Agreement" and "[w]hether the Board's remedy exceeded its authority and was punitive." (Petitioner's Brief at 3.) According to EBEWC, it substantially complied with the Settlement Agreement, and "the Board's decision is unreasonable, unfair, and punitive." (Id. at 24 (emphasis omitted).) We agree that the Board overreached and acted in a punitive fashion in this matter.

## A.    Section 10(e)

We must first address a threshold issue—whether EBEWC adequately raised its objections before the Board as required by Section 10(e) of the NLRA. According to the Board, the only issue EBEWC purportedly raised before the Board—which was the only issue it could have raised under the Settlement Agreement—was the claim to have fully complied with the Settlement Agreement. The Board contends that "on review the Company belatedly challenges the Board's Order on

newly minted grounds—most of which it is precluded from raising by the noncompliance provisions of the Agreement itself, and all of which it failed to raise before the Board." (Respondent's Brief at 23 (footnote omitted).)  While EBEWC could have more clearly raised its objections, we conclude that it adequately presented its (overlapping) objections of substantial compliance, disproportionate forfeiture, and punitiveness before the Board.

Section 10(e) of the Act provides that "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."  29 U.S.C. § 160(e).  "Application of Section 10(e) is mandatory, not discretionary."  Oldwick Materials, Inc. v. NLRB, 732 F.2d 339, 341 (3d Cir. 1984) (quoting NLRB v. Ochoa Fertilizer Corp., 368 U.S. 318, 322 (1961)).  "In Marshall Field, the Court declared that § 10(e) expresses 'the salutary policy * * * of affording the Board opportunity to consider on the merits questions to be urged upon review of its order.'"  NLRB v. Int'l Union of Operating Eng'rs, Local 66, 357 F.2d 841, 844 (3d Cir. 1966) (quoting Marshall Field & Co. v. NLRB, 318 U.S. 253, 256 (1943)).  This policy is designed "to give full recognition to the 'function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess.'"  Id. (quoting Univ. Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); see also, e.g., Local 900, Int'l Union of Elec., Radio and Mach. Workers v. NLRB, 727 F.2d 1184, 1191 (D.C. Cir. 1984) (stating that Section 10(e) serves notice function ensuring that the Board has opportunity to resolve all issues properly within its jurisdiction and

adjudicatory efficiency by insuring against repetitive judicial appeals); Livingston Powdered Metal, 669 F.2d at 136 ("Section 10(e) is intended to prevent a litigant from raising a matter in the courts which had never been presented to the Board for its consideration—a circumstance not present in this case. The company did bring the matter to the Board's attention so that it had the opportunity to rule on the question. Accordingly, the statutory purpose has been served and we reject the Board's contention that s 10(e) bars our review here.").

"The crucial question in a section 160(e) analysis is whether the Board '"received adequate notice of the basis for the objection."'" NLRB v. FedEx Freight, Inc., 832 F.3d 432, 437 (3d Cir. 2016) (quoting FedEx Freight, Inc. v. NLRB, 816 F.3d 515, 521 (8th Cir. 2016)). We are satisfied that the Board received adequate notice of the basis of EBEWC's objections. Unlike in the case law cited by the Board, the party in this proceeding did not simply fail to file, among other things, any answer, response to a summary judgment motion, objections to the Administrative Law Judge's findings of fact and conclusions of law, or motion for reconsideration. See, e.g., Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982) (stating that issue decided by Board was not raised by either General Counsel or by employer but that respondent could have objected to decision in petition for reconsideration or rehearing); Oldwick Materials, 732 F.2d at 341 ("Thus, this record is devoid of any evidence indicating that petitioner ever filed any answer to the amended complaint, any response to the motion for summary judgment, any objection to the Board's order, or any request for reconsideration; instead of pursuing any of the options available, petitioner filed for review by this court."); Int'l Union of Operating Eng'rs, 357 F.2d at 847 ("We therefore conclude that respondent lost the right to complain of errors in

24

the Trial Examiner's decision when it failed to file exceptions with the Board.").

On the contrary, EBEWC did file with the Board the "Opposition of European Wax Center of East Brunswick to: (I) The Reissued Complaint; (II) General Counsel's Motion for Default Judgment and Issuance of Decision and Order; and (III) In Response to the August 3, 2018 Order Transferring Proceeding to the Board and Notice to Show Cause." (A66 (emphasis omitted).) In this filing, it expressly opposed the reissued complaint, motion for default judgment, and notice to show cause "and in support therefore avers that the alleged deficiencies were all addressed and complied with as set forth in the recent submissions to [the General Counsel's attorney] attached hereto as Exhibit 1." (Id.)

EBEWC specifically asked the Board to deny the relief requested by the General Counsel, find that it had fully satisfied the terms and conditions of the Settlement Agreement, and enter a final dismissal in this matter. The letter its counsel had sent to the General Counsel's attorney, a completed certification of compliance confirming that the "Notice to Employees" was e-mailed to employees on April 7, 2017 (A72), and a "copy of e-mail communication sent to all employees with Notices pursuant to the Settlement Agreement" were all included as part of the attached exhibit (A71). In her letter, EBEWC's attorney asserted that the enclosed documentation confirmed that it was fully compliant with its obligations under the terms of the Settlement Agreement, and she asked for confirmation that the notice to show cause would be withdrawn and no further actions would be required on the part of his client. The Board, in turn, acknowledged that EBEWC argued in its response to the notice to show cause that the default motion should be denied and the

25

reissued compliant should be dismissed because the documents attached to its response consisting of (among other things) the completed compliance forms and an e-mail communication to employees "show 'that the alleged deficiencies were all addressed and complied with.'" EBEWC, 2020 WL 2476669, at *3.

Admittedly, EBEWC's submissions to the Board argued that it had fully performed its obligations under the Settlement Agreement and did not explicitly refer to the concepts of substantial compliance, disproportionate forfeiture, or punitiveness. But we are satisfied that substantial compliance or performance as well as the related concepts of punitiveness and disproportionate forfeiture were essentially components of its argument to the Board as well as the concept of "default" for purposes of the Settlement Agreement and what EBEWC could raise before the Board. According to EBEWC, "[t]o the extent the Board claims it did not have notice that Petitioner believed e-mailing was sufficient in conjunction with all the other acts it took and the Board's actions and that the matter should be closed without any further remedy, those arguments are encompassed by the aforementioned objection itself as well as the content of the corresponding exhibits." (Petitioner's Reply Brief at 13.) After all, it is undisputed that the Settlement Agreement provided for the Notice to be sent by text but that the Notice was actually sent by e-mail. Yet EBEWC clearly indicated to the Board that its actions sufficed to justify the denial of the relief requested by the General Counsel and a final dismissal of the proceeding itself. Put another way, "[s]ince Petitioner did not contend that it sent the text, the fact that it believed that it nevertheless was in compliance more than adequately puts the Board on notice that it believed it had done enough to be considered in compliance whether or not the use of

26

the phrase 'substantial compliance' was used." (Id. at 14 (citing FedEx Freight, 832 F.3d 432).) Our conclusion is also consistent with the established principle that, "in a default case, more exacting judicial scrutiny is in order" because "the defendant's contentions are not considered, but rather the ex parte allegations of the adversary are accepted as true," and, accordingly, "[t]he possibility that an injustice may occur is much more likely in those circumstances since the controversies are decided upon a procedural technicality instead of a ruling on the merits."[2] Livingston Powdered Metal, 669 F.2d at 136.

## B.    The Merits

Turning to the merits, the Board contends that the Settlement Agreement's plain language set forth specific consequences for EBEWC's failure to comply with any of its terms, including reissuance of the complaint, the filing of a motion for default judgment, and the grant of a full remedy for the allegations in the complaint (which would be deemed to be true). Admittedly, the Settlement Agreement did specifically state that "[t]he Charged Party agrees that in case of non-compliance with *any of the terms* of this Settlement Agreement

---

[2] In turn, we note that the Board's own position here does seem to be "circuitous" (Petitioner's Reply Brief at 10 (emphasis omitted).) On the one hand, it insists that, "[b]efore the Board, the Company raised the only issue permitted by the Agreement it had voluntarily signed: it claimed to have fully complied with the Agreement." (Respondent's Brief at 22 (citing EBEWC, 2020 WL 2476669, at *1-*3).) On the other hand, the Board takes EBEWC to task for failing to raise the issues before the Board set forth in its appellate briefing (issues the Board insists that EBEWC could not have raised in the first place).

by the Charged Party, and after 14 days' notice from the Regional Director . . . of such non-compliance without remedy by the Charged Party, the Regional Director will issue a Complaint." (A25 (emphasis added).) "If . . . the agreement makes full performance a condition, substantial performance is not sufficient and if relief is to be had under the contract, it must be through excuse of the non-occurrence of the condition to avoid forfeiture." Restatement (Second) of Contracts § 237 cmt. d (citing Restatement (Second) of Contracts § 229 and illus. 1). Accordingly, "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." Restatement (Second) of Contracts § 229. "Under the present Section a court may, in appropriate circumstances, excuse the non-occurrence of a condition solely on the basis of the forfeiture that would otherwise result." Id. cmt. a. According to the Restatement, "[t]he rule stated in the present Section is, of necessity, a flexible one, and its application is within the sound discretion of the court." Id. cmt. b. "In determining whether the forfeiture is 'disproportionate,' a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture." Id. In turn, "[t]he rule of this Section applies only where occurrence of the condition was not a material part of the agreed exchange." Id. cmt. c. Under the Restatement, "[a] court may, of course, ignore trifling departures." Id.

Exercising the scrutiny necessary to ensure that injustice does not arise out of this default proceeding, see Livingston

28

Powdered Metal, 669 F.2d at 136, we are satisfied that the occurrence of the condition was manifestly not a material part of the agreed exchange and that the "forfeiture" is clearly disproportionate. In short, there is no indication that texting as opposed to some other method of electronic communication (such as e-mailing) had any real significance to EBEWC, its employees, or the Board itself. In addition, EBEWC otherwise fully complied with its other obligations under the Settlement Agreement.

We agree with the Board that "notice-distribution" "has been an essential element of the Board's remedies for unfair labor practices since the earliest cases under the Act." J. Picini Flooring, 356 NLRB 11, 12 (2010) (citing Pa. Greyhound Lines, Inc., 1 NLRB 1, 52 (1935), enforcement denied in relevant part, 91 F.2d 178 (3d Cir. 1937), rev'd, 303 U.S. 261 (1938)). Such notices serve several important functions, including counteracting the effect of unfair labor practices on employees by notifying them of their rights and the Board's role in protecting the exercise of those rights, informing the employees of steps to be taken to remedy violations and provide assurances that future violations will not occur, and deterring future violations. See, e.g., id. Furthermore, as the Board acknowledges in its appellate brief, "when the Board requires a charged party to electronically distribute the notice through its customary means of communicating with employees, it separates the type of electronic communication into specific categories, such as text, email, intranet, and internet." (Respondent's Brief at 28 (citing Pac. Green Trucking, 2019 WL 2715425, at *2; Dish Network Corp., 366 NLRB No. 119, 2018 WL 3209096, at *6 (June 28, 2018), review granted and enforcement denied in part on other grounds by Dish Network Corp. v. NLRB, 953 F.3d 370 (5th Cir. 2020)).)

There is no indication that texting (as opposed to other means of electronic communication like e-mailing) had any real significance to EBEWC, its employees, or the Board itself. In the decisions cited by the Board, the employer was ordered to provide notice by a particular electronic means *if* it *customarily* communicated with its employees by such means. See Pac. Green Trucking, 2019 WL 2715425, at \*2 ("In addition to physical posting of paper notices, notices shall be distributed electronically, such as by text message, email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means."); Dish Network, 2018 WL 3209096, at \*6 ("Dish shall also distribute remedial notices electronically via text message, email, intranet, internet, or other appropriate electronic means to its employees, in addition to the traditional physical posting of paper notices, if it customarily communicates with workers in this manner." (citing J. Picini Flooring, 356 NLRB 11)). But EBEWC did not agree that it "customarily" communicated with its employees by text. More broadly, the Settlement Agreement did not provide any explicit reason for why this particular means of electronic communications was specified. The re-issued complaint as well as the original pleading did state (as part of their remedy sections) that EBEWC communicates with its employees by text. When the Board invoked EBEWC's agreement that all of the allegations of the reissued complaint would be deemed admitted, communicating with its employees by text was therefore not among allegations that could be deemed admitted. EBEWC still also had the right to raise the threshold issue of default under the Settlement Agreement, and, in any event, neither the reissued nor the original complaint actually alleged that it "customarily" communicates via text. On the contrary, there is evidence in the record indicating that EBEWC communicates with its

employees by e-mail, including the April 7, 2017 e-mail summarizing the staff meeting held the same day (at which the Notice was read out to the employees) and attaching the Notice itself. Indeed, Zambrano herself preferred being notified by e-mail (identifying this mechanism as the best way to contact her on her time-off request forms).[3]

Nor has the agency consistently treated "texting" as essential or even all that important. While the initial January 6, 2017 correspondence from the compliance officer did reference texting, her subsequent February 1, 2017 letter merely stated that the terms of the Settlement Agreement required EBEWC to "distribute [the Notice] electronically to employees" without specifying the specific means to be used. (A51.) In fact, the compliance officer's March 20, 2017 e-mails did not mention electronic notification—in any format—at all.[4] Similarly, the e-mail from the compliance assistant dated May 9, 2017 did not reference communicating by electronic means as an outstanding item under the Settlement Agreement. By "distribut[ing] the Notice electronically to employees" in April 2017, EBEWC did more than enough to comply with its contractual obligations based on the statements made by the agency's own compliance

---

[3] At oral argument, counsel for the Board asserted that there was a reason that the Settlement Agreement specified texting. Because he did not participate in the negotiation process, he acknowledged that he did not know the actual reason.

[4] We note that the Board's decision and order (evidently copying from the reissued complaint) incorrectly stated that the March 20, 2017 e-mail from the compliance officer "noted that the Respondent . . .failed to . . . text the notice." EBEWC, 2020 WL 2476669, at *2.

31

personnel.

More broadly, EBEWC—together with distributing the Notice electronically—ultimately complied with its other contractual obligations under the Settlement Agreement, including the other notice requirements. It made Zambrano "whole by paying her $20,000 in backpay and interest," EBEWC, 2020 WL 2476669, at *1, rescinded the final warning issued to Siebold, and removed from its files all references to Zambrano's discharge (and informed her in writing this action had been done). As for the Notice itself, it was physically posted on site. The Notice was also read out loud at two different staff meetings—first at the April 7, 2017 meeting by EBEWC's manager and then on June 12, 2017 by the compliance officer. Finally, EBEWC notified the Regional Director in writing of the steps it had taken to comply with the Settlement Agreement.[5]

---

[5] Arguing that it acted well within its discretion by granting the motion for default judgment, the Board turns for support to Outokumpu Stainless USA, LLC, 365 NLRB No. 127, 2017 WL 3953403 (Sept. 7, 2017), enforced, 773 F. App'x 531 (11th Cir. 2019), and Stagetech Productions, LLC, 358 NLRB No. 116, 2012 WL 3839414 (Aug. 31, 2012). However, Outokumpu Stainless USA considered whether to grant default judgment on the grounds that "the Respondent breached the settlement agreement by posting, next to the Board's remedial notice, a side letter that detracted from the effectiveness of the notice." Outokumpu Stainless USA, 2017 WL 3953403, at *1. In Stagetech Productions, the General Counsel sought default judgment on the contested grounds that the employer had failed to comply with the terms of the informal settlement agreement by establishing and maintaining a discriminatory hiring

Given these circumstances, we determine that the Board erred in granting the request for default. In addition, we determine that the Board's action in imposing a full remedy after entering default was punitive and thereby inconsistent with its obligations under the NLRA. According to the Board, it properly exercised its broad remedial discretion by issuing its "standard make-whole relief" based on the language of the Settlement Agreement, the General Counsel's request for a full remedy, and the type of underlying labor law violations found in this case. (Respondent's Brief at 36.) However, the Board thereby exceeded the scope of its expansive yet still non-punitive authority by ordering EBEWC to offer Zambrano reinstatement even though the Notice disseminated pursuant to the Settlement Agreement stated that she had declined immediate and full reinstatement to her former job or to a substantially equivalent position. The Board likewise went too far by ordering EBEWC to make Zambrano whole for any loss of earnings or other benefits (including backpay with interest) despite the fact that Settlement Agreement as well as the January 6, 2017 letter indicated that the payment of $20,000

---

list/system and failing and refusing to call or return employees to their normal work frequency. Stagetech Prods., 2012 WL 3839414, at *2.

In its decision, the Board observed that "the Respondent also has not established that it has rescinded the handbook rules prohibiting talking or complaining about wages, hours, and working conditions or the Respondent's rules, policies, and/or procedures," but it added that "the Region has not cited this as a basis for default, either in its Motion for Default Judgment or its communications with the Respondent, and therefore we do not rely on it here." EBEWC, 2020 WL 2476669, at *3 n.1.

33

(which was made by EBEWC) would suffice to make her whole.

The Board took such drastic steps where the only alleged "default" in this proceeding was EBEWC e-mailing rather than texting the Notice to employees without any indication that the use of this different electronic communications mechanism affected the employees themselves in any way. On the contrary, the employees were made whole, and EBEWC's staff was notified of their rights both at two separate meetings where the Notice was read out loud and by receiving the Notice by e-mail (and the Notice was also physically posted at the facility). See, e.g., Quick, 245 F.3d at 254 (stating that purpose of NLRA is protection of employees and redress of their grievances). At best, the Board acted to punish EBEWC for its hyper-technical and relatively insignificant violation of the Settlement Agreement, for "repeatedly miss[ing] the Region's deadlines for full compliance" despite "the Region's admonitions that its continued failure to fully comply would lead" to reissuance of the complaint and a motion for default judgment (Respondent's Brief at 18), and for its ultimately "belated compliance with other terms of the Agreement" (id. at 27 (emphasis omitted)). Accordingly, we cannot allow the Board's punitive actions to stand.[6]  See, e.g., Republic Steel, 311 U.S. at 11-12 ("[The

---

[6] The decisions cited by the Board in support of its "full remedy" approach involved more than merely technical and otherwise harmless violations of the Settlement Agreement. See Qawasmi Trading Inc., 369 NLRB No. 89, 2020 WL 3065370, at *2 (May 27, 2020) (failure to comply with any of the terms of settlement agreement); Able Bldg. Maint., 2019 WL 2176671, at *2 ("According to the uncontroverted allegations in the motion for default judgment, the Respondents have failed to

Board's] 'authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices, even though the Board be of the opinion that the policies of the Act might be effectuated by such an order.'").

IV.

For the foregoing reasons, we will grant EBEWC's petition for review and will deny the Board's application for enforcement.

---

comply with the terms of the settlement agreement" (i.e., "the notice posting/mailing requirement and the submission of compliance documentation"); L.J. Logistics, Inc., 339 NLRB 729, 730 (2003) ("According to the uncontroverted allegations in the Motion for Summary Judgment, the Respondents have failed to comply with the settlement agreement by failing to remit the agreed-upon backpay amount due Christopher Charnot").